The PEOPLE of the State of Colorado,
Plaintiff–Appellant and Cross–Appellee,

v.

Robert Alexander WINTERS,
Defendant–Appellee and
Cross–Appellant.

The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Erik Peter ROSENDAL,
Defendant–Appellee.

Nos. 86SA361, 87SA289.

Supreme Court of Colorado,
En Banc.

Nov. 28, 1988.
Rehearing Denied Jan. 17, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun, Asst. Atty. Gen., Denver, for plaintiff-appellant and cross-appellee.

David F. Vela, State Public Defender, Judy Fried, Deputy State Public Defender,

Denver, for defendant-appellee and cross-appellant.

Alexander M. Hunter, Dist. Atty., John M. Haried, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

David F. Vela, State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for defendant-appellee.

MULLARKEY, Justice.

We consolidated the cases of *People v. Winters*, No. 86SA361 and *People v. Rosendal*, No. 87SA289, to determine whether a trial court's imposition of a sentence to community corrections contravened section 18–18–105(3), 8B C.R.S. (1986), which required a "minimum term of incarceration" without eligibility for probation or suspension of sentence when a defendant was convicted of possession or sale of more than 28 grams of cocaine.[1] We hold that section 18–18–105(3) required a trial court to sentence a violator to the custody of the Department of Corrections and did not permit sentencing to community corrections under section 17–27–105(1)(a), 8A C.R.S. (1986). We vacate the sentences imposed and remand each case to the district court for resentencing.

In his appeal in No. 86SA361, the defendant Robert Winters alleges that the trial court abused its discretion in denying a motion for mistrial when the prosecution introduced into evidence a tape recording containing information relating to evidence of a prior crime on the part of Winters. Because Winters failed to make a timely objection when the tape was played and a cautionary instruction was given to the jury, we hold that the trial court did not abuse its discretion.

I.

In separate, unrelated cases brought in Boulder County District Court, the defendants Robert Winters and Eric Rosendal were charged with sale and possession of cocaine in violation of section 18–18–105(1)(a).[2] Each was convicted of a class 3 felony pursuant to section 18–18–105(2)(a)(I).[3] Winters was convicted by a jury of possession and sale of a schedule II controlled substance and conspiracy to sell a schedule II controlled substance. Rosendal was charged with six counts of possession of controlled substances and one count of conspiracy to sell a schedule II controlled substance. Rosendal pled guilty to counts of sale and conspiracy to sell a schedule II controlled substance. The conviction in each case involved more than 28 grams of cocaine. Pursuant to section 17–27–105(1)(a),[4] Winters was sentenced to a term of four years to be served in community corrections plus participation in an alcohol drug treatment program and Rosen-

---

1. In both cases, the People appealed directly to this court in accordance with section 16–12–102(1), 8A C.R.S. (1986). Defendant Winters appealed his conviction to the court of appeals and his appeal was subsequently consolidated in this court with the People's appeals.

2. At the time of these offenses, section 18–18–105(1)(a) provided:

   Except as authorized by part 3 of article 22 of title 12, C.R.S., it is unlawful for any person knowingly or intentionally to manufacture, dispense, sell, or distribute, with or without remuneration, to possess, or to possess with intent to manufacture, dispense, sell, or distribute, with or without remuneration, a controlled substance; or to induce, attempt to induce, or conspire with one or more other persons to manufacture, dispense, sell, or distribute, with or without remuneration, or to possess with intent to manufacture, dispense, sell, or distribute, with or without remuneration, a controlled substance.

This subsection subsequently was amended in a manner not relevant to these cases. *See* § 18–18–105(1)(a), 8B C.R.S. (1988 Supp.).

3. Section 18–18–105(2)(a)(I) states:

   Except as is otherwise provided for offenses concerning marihuana and marihuana concentrate in section 18–18–106, any person who violates any of the provisions of subsection (1) of this section:
   (a) In the case of a controlled substance listed in schedule I or II of part 3 of article 22 of title 12, C.R.S., commits:
   (I) A class 3 felony....

4. Section 17–27–105(1)(a) states:

   A sentencing judge is authorized to sentence a nonviolent felony offender to a residential or nonresidential community correctional facility or program operated by a unit of local government or nongovernmental agency.

dal was sentenced to six years in community corrections.

## II.

In general, a trial court may sentence a convicted felon to the custody of the Department of Corrections for imprisonment in a correctional facility. § 18–1–105(1)(c), 8B C.R.S. (1986). Section 17–27–105(1)(a) permits direct placement of a convicted felon in a community corrections program by authorizing the sentencing judge "to sentence a nonviolent felony offender to a residential or nonresidential community correctional facility or program operated by a unit of local government or nongovernmental agency." The trial courts in both cases relied on this section for authority to sentence each defendant to community corrections.

■■ The prosecution maintains that the trial courts erred because the offenses involved more than 28 grams of cocaine. It relies on the term "incarceration" in section 18–18–105(3) as evidencing a legislative intent that an offender must be sentenced to a facility under the authority of the Department of Corrections rather than allowing the sentencing judge discretion to place the violator in a community corrections program. At the time of these offenses, section 18–18–105(3) provided:

> [A]ny person convicted pursuant to paragraph (a) of subsection (2) of this section for knowingly or intentionally manufacturing, dispensing, selling, or distributing, with or without remuneration, or possessing with intent to manufacture, dispense, sell, or distribute, with or without remuneration, twenty-eight grams or more of any material, compound, mixture, or preparation which contains cocaine, as defined in section 12–22–303(6.-5), C.R.S.; or inducing, attempting to induce, or conspiring with one or more other persons to manufacture, dispense,

sell, or distribute, with or without remuneration, or possessing with intent to manufacture, dispense, sell, or distribute, with or without remuneration, twenty-eight grams or more of any material, compound, mixture, or preparation which contains cocaine, as defined in section 12–22–303(6.5), C.R.S., shall be sentenced to at least the minimum term of *incarceration* in the presumptive range provided for such offense in section 18–1–105(1)(a) and, in addition to any other penalty, upon conviction shall be fined not less than one thousand dollars but not more than five hundred thousand dollars. . . . Any person who is subject to the provisions of this subsection (3) shall not be eligible for probation or suspension of sentence.

(Emphasis added.) [5]

Our primary task in construing section 18–18–105(3) is to ascertain and to give effect to the intent of the General Assembly. Constructions which defeat the obvious legislative intent should be avoided. *See People v. Guenther,* 740 P.2d 971, 975 (Colo.1987); *People v. District Court,* 713 P.2d 918, 921 (Colo.1986); *People v. Mascarenas,* 706 P.2d 404, 406 (Colo.1985). To ascertain intent, words and phrases should be given their plain and obvious meaning. *People v. Guenther,* 740 P.2d at 975; *Binkley v. People,* 716 P.2d 1111, 1113 (Colo.1986); *People v. District Court,* 713 P.2d at 921.

There is no statutory definition of "incarceration." Black's Law Dictionary 685 (5th ed. 1979) defines "incarceration" as "imprisonment, confinement in a jail or penitentiary." We note that, for the most part, the legislature avoided using the term "incarceration" or "imprisonment" in the statutes creating and governing the community corrections program, and used terms such as "residential accommodations," "placement," and "housed." *See, e.g.,* §§ 17–27–

---

5. In 1987, section 18–18–105(3) was amended to read:

"[A]ny person convicted pursuant to paragraph (a) of subsection (2) of this section . . . shall be sentenced to the *department of corrections* for at least the minimum term of incarceration in the presumptive range provided for such of-

fense. . . ." *See* § 18–18–105(3), 8B C.R.S. (1988 Supp) (emphasis added). The amended act applies to offenses committed on or after July 1, 1987. Ch. 115, sec. 16 § 18–18–105, 1987 Colo. Sess.Laws 603, 612. It is inapplicable here because the offenses involved in these cases occurred prior to that date.

103(3), –104(3), –113(2), –114(1), 8A C.R.S. (1986). However, section 17–27.1–101(2), 8A C.R.S. (1986), refers to nongovernmental community corrections type facilities "where inmates are not *incarcerated* 24 hours per day" which suggests that the term "incarceration" may apply to placement or confinement in a community corrections setting.

The defendants argue that community corrections is a form of incarceration. Since the legislature did not expressly prohibit sentencing to community corrections in section 18–18–105(3), they assert that the trial courts properly sentenced them to community corrections.

Because the statutory language itself was ambiguous, we turn to the legislative history to determine the legislative intent. *Colorado Common Cause v. Meyer*, 758 P.2d 153, 160 (Colo.1988); *Engelbrecht v. Hartford Acc. & Indem.*, 680 P.2d 231, 233 (Colo.1984); § 2–4–203, 1B C.R.S. (1980). Section 18–18–105(3) was adopted in 1984 by the General Assembly as part of Senate Bill 80. Review of the tape recordings of hearings held by both the Senate and House Judiciary Committees and the floor debates of both houses discloses an unequivocal legislative intent that violators be sentenced to the custody of the Department of Corrections. The recorded discussion indicates that the members of the General Assembly thought it was necessary to send a "message" that Colorado was not a place in which to traffic drugs and that offenders would be treated severely. The sponsors of the legislation argued that requiring a mandatory sentence to be served without the possibility of probation or a deferred sentence would deter cocaine sales in the state. The summary for Senate Bill 80, as originally introduced, states that the bill "[r]equires, upon conviction ... the defendant to be incarcerated in the State penitentiary without suspension." In moving for adoption of the bill during Senate floor debates, Senator Les Fowler, chief Senate sponsor of the bill, explained

that upon conviction violators would "be sentenced to at least four years in the state penitentiary." Tape Recording of Senate Floor Debate on Senate Bill 80, February 24, 1984, 54th General Assembly. The House sponsor of the bill, Representative Carol Taylor–Little, introduced the bill as requiring a "mandatory prison term." Tape Recording of House Floor Debate on Senate Bill 80, March 13, 1984, 54th General Assembly. Throughout the testimony and discussions at the Senate and House Judiciary Committee hearings repeated references were made to violators being sentenced to the State Penitentiary in Canon City. *See* Tape Recordings of Testimony before Senate Committee on Judiciary on Senate Bill 80, January 14 and January 18, 1984, 54th General Assembly; Tape Recording of Testimony before House Committee on Judiciary on Senate Bill 80, March 6, 54th General Assembly.

The fiscal note which accompanied the bill was prepared under the assumption that *all* those convicted would be incarcerated under the supervision of the Department of Corrections.[6] Estimated costs in the fiscal note were based upon the projected cost per inmate which was determined by the general fund allocation divided by the prison population. *See* Office of State Planning and Budgeting, Fiscal Impact Report on S.B. 80 to Senate Judiciary Committee (1984). There is no indication in the legislative history that there was an intent to allow sentencing to community corrections. All of the testimony and explanatory statements reflect an intent to impose mandatory prison sentences and to remove these felons from the community.

Based on the language of the bill and the relevant supporting legislative history, we conclude that section 18–18–105(3) mandated sentencing these defendants to the Department of Corrections because each was convicted of cocaine offenses involving more than 28 grams. As the later enacted and more specific statute, section 18–18–105(3) superseded the general authority in

---

**6.** During testimony before the Senate Judiciary Committee, Alex Hunter, Boulder District Attorney, and John Buechner, Chairman of the Boulder Cocaine Task Force, voiced concern that of 300 cocaine related prosecutions in 1983 only 76 persons were incarcerated; of those, only seven were sent to the state penitentiary. Both indicated there was a need for mandatory prison sentences.

section 17–27–105(1)(a) permitting direct placement in community corrections. We vacate the sentences imposed and remand the cases to the trial court with directions to resentence the defendants to the custody of the Department of Corrections.

## III.

In his appeal, Winters asserts that the trial court abused its discretion by denying his motion for mistrial. During the trial, the prosecution introduced into evidence several tape recorded conversations between Winters and a police drug agent regarding cocaine transactions. During the course of one recorded conversation, the jury heard Winters refer to the fact that he was then under a deferred sentence for third-degree assault.[7] The tape recording was received into evidence and played for the jury without objection.

During trial on the following day, Winters moved for a mistrial on the grounds that the reference to the third-degree assault on the tape recording was inadmissible and prejudicial. In response to questioning by the trial court, the defense counsel conceded that he had access to the tape before trial and was aware of the reference to the third-degree assault at that time. The trial court denied the defendant's motion for a mistrial, ruling that the defendant should have objected either before trial or at least while the tape was being played. Although the objection came too late for the trial court to prevent the jury from hearing the defendant's reference to his prior assault charge, the trial court offered to give a cautionary instruction. With the defense counsel's agreement, the court then instructed the jury to disregard the reference to the defendant's prior conviction.[8]

■ The defendant's failure to object contemporaneously to the admission of evidence precludes appellate review of the matter unless the alleged error is so serious as to prejudice the basic rights of the defendant. *People v. Taggart*, 621 P.2d 1375 (Colo.1981); *People v. Vigil*, 180 Colo. 104, 502 P.2d 418 (1972). Crim.P. 52(b) permits appellate review when the error or defect rises to the level of plain error. "Plain error is present only if an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Hampton*, 746 P.2d 947, 953 (Colo.1987). *See also Wilson v. People*, 743 P.2d 415, 419–420 (Colo.1987).

■ In this case, five tapes of recorded conversations relating to cocaine sales from Winters to an undercover police officer from the Boulder Police Department Narcotics Unit were introduced into evidence. The majority of the testimony during the two days of the trial was that of the undercover police officer testifying in person and playing the tape recordings to the jury. The conversations were recorded by the undercover police officer both during telephone calls leading to the cocaine sales and also while the actual cocaine sales took place. The recordings cover a period from January 17, 1986 to March 24, 1986 when Winters sold 48 grams of cocaine to the undercover police officer in six separate transactions. The cocaine in-

---

7. The portion of the tape referred to is a conversation between Winters and the undercover agent:

MR. WINTERS: You know, I'm not worried about nothing except the heat—
MR. WALKER: Yeah.
MR. WINTERS: —because if I get so much as a DUI, I go to jail for two years.
MR. WALKER: Yeah.
MR. WINTERS: I'm on a deferred sentence right now for assault.
MR. WALKER: Oh, really?
MR. WINTERS: Yeah, third degree assault.
MR. WALKER: Yeah, see, don't want no hassles, and I'm just going to keep as low and easy going.

8. The court gave the following cautionary instruction to the jury:

[A]t the end of the day yesterday we were listening to a tape and you heard a reference on the tape to an assault charge. I wanted to say to you that there was—that this was a misdemeanor offense of which the defendant was not convicted. You should not consider—this evidence is stricken from the record and you should not consider it for any purpose whatsoever and should not assume anything bad about the defendant because of this reference.

volved in the sales also was introduced into evidence without objection from Winters.

The defendant's reference to his misdemeanor assault charge was a fleeting comment, not repeated by him or any other witness. A cautionary instruction was given which cured any harm caused by playing the unedited tape. *See Vigil v. People,* 731 P.2d 713, 716 (Colo.1987); *Kurtz v. People,* 177 Colo. 306, 320, 494 P.2d 97, 105 (1972); *People v. Sandoval,* 709 P.2d 90, 92 (Colo.Ct.App.1985). Considering all of the circumstances, we conclude that admission of the defendant's reference to his misdemeanor assault did not substantially influence the verdict or affect the fairness of the trial. There was no plain error and we will not disturb the trial court's denial of the motion for mistrial.

### IV.

We affirm the judgment of conviction in 86SA361 but vacate the sentence and remand the case to the trial court for resentencing. In 87SA289, we vacate the sentence and remand the case to the trial court for resentencing.