**Ernest J. VENSOR, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 05SC193.**

Supreme Court of Colorado,
En Banc.

Feb. 5, 2007.

David S. Kaplan, Colorado State Public Defender, Karen Taylor, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Ernest Vensor sought review of the court of appeals' judgment affirming his sentence for conviction of two class four felony sex offenses. *See People v. Vensor,* 116 P.3d 1240 (Colo.App.2005). The district court sentenced Vensor to consecutive terms of twenty-five years to life. The court of appeals upheld the sentence, finding that the Lifetime Supervision of Sex Offenders Act places no upper limit on the minimum or lower term of an indeterminate sentence prescribed for sex offenses, and that the sentencing court did not violate the defendant's constitutional rights by considering the testimony of family members of other children claiming to have been molested by the defendant.

Although the sentencing court was not precluded from considering testimony of other, uncharged sexual assaults, its sentence exceeded statutory limitations. Because the Act is properly construed to mandate an indeterminate sentence with a lower term of not more than twice the maximum sentence in the presumptive range for the class of

felony of which the defendant stands convicted, the judgment of the court of appeals is reversed and the case is remanded with directions to return it for re-sentencing.

## I.

Ernest Vensor pled guilty to two counts of sexual assault on a child and was sentenced to consecutive terms of twenty-five years to life. He appealed his sentence asserting, among other things, that the lower term of the indeterminate sentence prescribed by the Lifetime Supervision of Sex Offenders Act could be no greater than twice the maximum of the presumptive range for a class four felony,[1] and that constitutional guarantees of due process forbade the sentencing court's consideration of hearsay allegations by family members of other children claiming to have been molested by the defendant.

The court of appeals affirmed the defendant's sentences. It rejected the defendant's due process claim, and it interpreted the Lifetime Supervision of Sex Offenders Act to mandate an indeterminate sentence for class four felony sex offenders, with both upper and lower terms but without any cap, or upper limit, on the minimum or lower term.

The defendant petitioned this court for a writ of certiorari.

## II.

Subject to constitutional limitations not at issue here, it is the prerogative of the legislature to define crimes and prescribe punishments. *Martinez v. People,* 69 P.3d 1029, 1031 (Colo.2003); *Shipley v. People,* 45 P.3d 1277, 1278 (Colo.2002); *People v. Flenniken,* 749 P.2d 395, 398 (Colo.1988). Courts therefore exercise discretion in sentencing only to the extent permitted by statute. The goal of any interpretation of a sentencing statute must be to discover and effect the legislative intent. *See People v. Banks,* 9 P.3d 1125, 1127 (Colo.2000); *Schubert v. People,* 698 P.2d 788, 793 (Colo.1985).

1. The maximum sentence in the presumptive range for class four felonies is six years, unless the crime presents an extraordinary risk of harm to society. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S. (2006). For extraordinary risk crimes, the maximum sentence in the presumptive range shall be increased by two years. *See* § 18–1.3–401(10), C.R.S. (2006).

Felony sentencing in this jurisdiction has for some time been largely dictated by a complex scheme of interlocking statutes, premised upon the segregation of felony offenses into six levels or classes, each with its own presumptive sentencing range. *See* § 18–1.3–401, C.R.S. (2006). On the basis of extraordinary mitigating or aggravating circumstances, sentencing courts are authorized to sentence felons to as little as half the minimum of the presumptive range or as much as twice the maximum of the presumptive range for the class of felony of which a defendant stands convicted. *See* § 18–1.3–401(6). Although this sentencing scheme, in contrast to the scheme that preceded it, requires courts to impose sentences consisting of a determinate or specific term of years, the parole board has nevertheless always retained the discretion to release a defendant to parole when he has acquired sufficient credits or served a statutorily specified percentage of his sentence. *See generally* article 22.5 of title 17 of the Colorado Revised Statutes. The length of time that felons may be supervised on parole, however, has been prescribed by various statutory formulae rather than by an upper limit of an indeterminate sentence set by the courts. *See generally Martin v. People,* 27 P.3d 846 (Colo. 2001) (summarizing history of changes made to parole statutes between 1971 and 2001).

Prior to 1979, courts in this jurisdiction were actually forbidden from imposing a definite term of imprisonment on any felon not convicted of a class one felony. Instead, they were required to establish a maximum term, not longer than the longest term fixed by law for the offense of which the defendant was convicted, and depending on the particular class of felony, either a minimum term, not less than the shortest term fixed by law, or no minimum term at all. *See* § 16–11–304, C.R.S. (1973) (formerly § 39–11–304, C.R.S. (1963)); *see also Thiret v. Kautzky,* 792 P.2d 801, 803–04 (Colo.1990) (explaining effect of

---

**2.** In 2002, the entire Act was relocated to part 10, article 1.3, title 18. The majority of the Act as it appears today is identical to the original 1998 statute at sections 16–13–801 to –812.

**3.** If the offender is convicted of an offense constituting a crime of violence, the indeterminate term is further limited to at least the midpoint of

1979 revision on previous sentencing scheme). In this statutory scheme, release of a defendant before he had fully served the maximum term of his indeterminate sentence was within the discretion of the parole board, to be exercised by it anytime after the defendant had served his minimum term, less any "good time," "trusty time," or "meritorious time." Whether in prison or on parole, an offender could be subjected to some form of supervision until he had completed the maximum term, or upper limit, of his indeterminate sentence. *See generally Thiret,* 792 P.2d at 804.

In 1998, the Colorado General Assembly enacted the Lifetime Supervision of Sex Offenders Act. *See* ch. 303, sec. 1, § 16–13–801 to –812, 1998 Colo. Sess. Laws 1278, 1278–88.[2] The Act marked a clear return to indeterminate sentencing for many class two, three, and four felony offenses of a sexual nature. Unless a sex offender is sentenced to probation as permitted by the Act, *see* section 18–1.3–1007, C.R.S. (2006), it requires that he be sentenced to the custody of the department of corrections for an indeterminate term of at least the minimum of the presumptive range specified in section 18–1.3–401 and a maximum of the sex offender's natural life. § 18–1.3–1004(1)(a), C.R.S. (2006).[3] On completion of the minimum period of incarceration specified in the sex offender's indeterminate sentence, less any credits earned by him, the Act assigns discretion to the parole board to release him to an indeterminate term of parole of at least ten years for a class four felony, or twenty years for a class two or three felony, and a maximum of the remainder of the sex offender's natural life. § 18–1.3–1006(1), C.R.S. (2006).

### III.

 It is undisputed that the defendant's sentences for sexual assault on a child are governed by section 18–1.3–1004(1)(a):

> the presumptive range, *see* subsection (1)(b), and if he is convicted as an habitual sex offender or after testing positive for HIV, the indeterminate term is limited to at least three times the maximum of the presumptive range. *See* § 18–1.3–1004(1)(c) & (d).

Except as otherwise provided in this subsection (1) and in subsection (2) of this section, the district court having jurisdiction shall sentence a sex offender to the custody of the department for *an indeterminate term of at least the minimum of the presumptive range specified in section 18–1.3–401 for the level of offense committed and a maximum of the sex offender's natural life.*

(emphasis added).

The court of appeals found this language to be clear and unambiguous, and therefore it found unnecessary the consideration of any aids to statutory construction. Largely in reliance on its prior holding in *People v. Larson,* 97 P.3d 246 (Colo.App.2004); *cf. People v. Vigil,* 104 P.3d 258, 269 (Colo.App. 2004), *rev'd on other grounds,* 127 P.3d 916 (Colo.2006); *People v. Becker,* 55 P.3d 246 (Colo.App.2002); *People v. Smith,* 29 P.3d 347 (Colo.App.2001), the appellate court concluded that by using the words "at least," the legislature designated the shortest possible minimum term to which the defendant could be sentenced but placed no upper limit or cap on that minimum term. The effect of its interpretation was therefore to require an indeterminate sentence with both upper and lower terms, but one in which the lower term for any sex offense could, at the sentencing court's discretion, be of unlimited duration. While this may be one reasonable interpretation of the language of the statute itself, it is not the only one.

Largely because the subsection refers, in literally the same phrase, to two different sentencing ranges—the presumptive range set out in section 18–1.3–401 for each particular class of felony and the indeterminate sentence applicable solely to sex offenders—and uses the term "minimum" in reference to the former but the term "maximum" in reference to the latter, the language of the statute itself is far from clear about the precise limitations intended for the lower term of an indeterminate sex offender's sentence. As the defendant urges, the statutory language "at least" can just as reasonably be understood to simply designate the lower term of the indeterminate sentence, in juxtaposition to the "maximum" or upper term. Such an interpretation would result in a statutorily predetermined sentence for sex offenders, consisting of a lower term always set at the minimum of the presumptive range for the offender's class of felony and an upper term set at life. By the same token, it would not be unreasonable to understand this statutory language, prescribing the lower term of the indeterminate sentence by express reference to the presumptive sentencing procedure of section 18–1.3–401, as incorporating the other features and limitations of that statutory scheme as well.

■ If statutory language is susceptible of more than one reasonable interpretation, it is considered ambiguous and subject to construction according to well-accepted aids for determining legislative intent. *Frank M. Hall & Co. v. Newsom,* 125 P.3d 444, 448 (Colo.2005); *Martinez,* 69 P.3d at 1031; *Shipley,* 45 P.3d at 1278. Particularly pertinent to the construction of this sentencing provision for sex offenders is the presumption that provisions of a broader regulatory scheme were drafted with an awareness of the other provisions of the scheme and a design to create a consistent, harmonious whole. *Newsom,* 125 P.3d at 448; *Martinez,* 69 P.3d at 1033. Equally important to the construction of the Lifetime Supervision of Sex Offenders Act is our acceptance of legislative history, and particularly the general assembly's own formal expression of its purpose, as an indication of legislative intent. *Cf. Brush Grocery Kart, Inc. v. Sure Fine Market, Inc.,* 47 P.3d 680, 682 (Colo.2002).

In light of the Act's title, its separate declaration of legislative purpose, and the entirety of its provisions, read as a whole, there can be little doubt that the language of section 18–1.3–1004(1)(a) mandates an indeterminate sentence with an upper or maximum term of the sex offender's natural life. The Act expressly allocates to the parole board the discretion to supervise for "the remainder of the sex offender's natural life," necessarily implying a sentence sufficiently long to permit that supervision whenever the parole board deems it necessary, *see* section 18–1.3–1006(1)(b), and unlike the lower term, the legislature describes the upper term without using words of discretion or limita-

tion. In conjunction with the emphatic testimony of the bill's sponsor, these indicators of legislative intent make equally clear, however, that the lower term is implicitly circumscribed by the provisions of the presumptive sentencing statute.

Although the language of the statute alone could be reasonably understood (as it was by the court of appeals) to require an indeterminate sentence with a lower component limited only by the requirement that it not drop below the presumptive range, this interpretation cannot be squared with the rest of the Act. Such a cramped reading would effectively render the imposition of an indeterminate sentence discretionary with the sentencing court. Simply by imposing a sentence with an extremely long lower term, the sentencing court could collapse an ostensibly indeterminate sentence into a determinate one of life imprisonment, effectively eliminating any role for the parole board. The appended declaration of purpose makes clear the legislature's intent to provide for treatment and extended supervision, rather than to punish sex offenders with terms of incarceration longer than those of other felons of the same class.[4]

Likewise, the words "at least" cannot be construed, consistent with other indicators of legislative intent, to require a lower term fixed precisely at the minimum of the presumptive range. Such an interpretation would effectively deprive sentencing courts of any discretion whatsoever, forcing them to treat all sex offenders of a particular class identically. It would transfer all discretion in sentencing from the courts to the parole board, barring any differentiation of sex offenses or offenders except on the basis of the offender's need for further treatment and supervision, outside the context of punishment.

While the legislative declaration demonstrates a clear intent not to increase the punishment of sex offenders, it nowhere suggests that sentencing courts be relieved of their duty to account for aggravation in the commission of felony sex offenses. Had the legislature intended to limit judicial discretion in this way, it could much more easily have done so by simply designating a specific term of years for its lower limit, as it did in prescribing possible terms of parole. *See* § 18–1.3–1006(1)(b) ("The period of parole for any sex offender convicted of a class 4 felony shall be an indeterminate term of *at least ten years* .... The period of parole for any sex offender convicted of a class 2 or 3 felony shall be an indeterminate term of *at least twenty years* ....") (emphasis added).

No doubt the legislature could have drafted subsection (1)(a) to more clearly express its intention that the lower component of an indeterminate sex offender sentence be neither completely unlimited nor strictly limited to a legislatively-predetermined term in every case, but that intention appears clearly enough when the Act is read as a whole. On the other hand, in defining the lower component of its new indeterminate sex offender sentence by reference to the existing presumptive sentencing scheme of section 18–1.3–401, the legislature did choose language adequate to incorporate, without expressly enumerating them, all of the other features and limitations of that statutory scheme not expressly excluded. That this lower term was intended to be imposed in the same manner and within the strictures of a determinate sentence prescribed by the presumptive sentencing scheme emerges clearly from the other provisions of the Act as well as the unequivocal committee testimony of the bill's sponsor. *See Hearing on H.B. 981156 Before the House Judiciary Committee,* 61st Legis. 2nd Reg. Sess. (Jan. 27, 1998).

4. The general assembly hereby finds that the majority of persons who commit sex offenses, *if incarcerated or supervised without treatment, will continue to present a danger to the public* when released from incarceration and supervision. The general assembly also finds that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in both state dollars and loss of human potential. The general assembly further finds that some sex offenders respond

well to treatment and can function as safe, responsible, and contributing members of society, so long as they receive treatment and supervision. The general assembly therefore declares that *a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary,* is necessary for the safety, health, and welfare of the state.

§ 18–1.3–1001, C.R.S. (2006) (emphasis added).

Section 18–1.3–401 is more than a list of presumptive ranges for felony sentencing; it articulates the fundamental mechanism for felony sentencing in this jurisdiction. It not only prescribes a presumptive range for each class of felony but also specifies the manner in which a particular, definite term is to be chosen within that range; the extent to which a sentence may deviate from that range; and the circumstances under which a deviation from the presumptive range may occur. Under limited circumstances, a felon may be sentenced to as little as half the minimum term in the presumptive range, but under no circumstances does section 401 authorize sentencing to more than twice the maximum term of the presumptive range. § 18–1.3–401(1)(a)(V) & (VI), C.R.S (2006).

Much like the formulae of section 18–1.3–1004(1) for sex offender sentencing, section 18–1.3–401 also identifies particular aggravating circumstances, the presence of which will truncate the full sentencing range, requiring a sentence of at least the minimum, or in some cases the midpoint, of the presumptive range. *See* § 18–1.3–401(8) & (9). While the legislature has typically included the words, "but not more than twice the maximum term authorized in the presumptive range," to emphasize that its modification of the lower end of the sentencing range has no effect on its upper limits, this is not always the case. Despite indisputably intending to maintain the upper limitations of the general sentencing scheme, the legislature has, with regard to some crimes other than sex offenses, left these limitations to be inferred from its specific reference to the presumptive sentencing scheme of section 18–1.3–401. *See, e.g.,* § 18–6.5–103(4), C.R.S. (2006) ("If the offender is convicted of robbery of an at-risk adult or an at-risk juvenile, the court shall sentence the defendant to the department of corrections for at least the presumptive sentence under 18–1.3–401(1)."); § 18–1.3–401(1)(b)(II) ("[E]xcept that any person who has been twice convicted of a felony ... shall be sentenced to at least the minimum sentence specified in [the presumptive ranges of 18–1.3–401(1)(a)(V)(A) ] and may receive a fine in addition to said sentence."); § 18–1.3–401(1)(a)(III)(E) ("[A] person who has been twice convicted of a felony ... shall be sentenced to at least the minimum sentence specified [in the presumptive ranges of 18–1.3–401(1)(a)(V)(A) ] and may receive a fine in addition to said sentence.").

While it would be extraordinary, under any circumstances, to understand words limiting the court's discretion at the lower end of the sentencing range to implicitly eliminate all other sentencing constraints, there is particular reason to believe this was not intended of sex offender sentencing. Testifying before the House Judiciary Committee, Representative Norma Anderson, the Act's sponsor, emphasized three separate times that the Act was not intended to change the sentencing guidelines already in place under Colorado law. *Hearing on H.B. 98–1156 Before the House Judiciary Committee,* 61st Legis. 2nd Reg. Sess. (Jan. 27, 1998). Responding to questions from her fellow house members, Representative Anderson repeatedly assured the committee that the Lifetime Supervision of Sex Offenders Act would simply change a court's ability to *monitor* sex offenders by subjecting them to lifetime supervision in the form of probation and parole. *Id.* While by no means conclusive, the testimony of a bill's sponsor concerning its purpose and anticipated effect can be powerful evidence of legislative intent. *See, e.g., Blaine v. Moffat County Sch. Dist. Re No. 1,* 748 P.2d 1280, 1290 (Colo.1988); *People v. Winters,* 765 P.2d 1010, 1013 (Colo.1988).

As a result of these strong indications of not only what the legislature intended but, as importantly, what it did not intend, the ambiguous language of section 18–1.3–1004(1)(a) must be construed to require an indeterminate sentence for the class two, three, and four felony sex offenses to which it applies, consisting of an upper term of the sex offender's natural life and a lower term of a definite number of years, not less than the minimum nor more than twice the maximum of the presumptive range authorized for the class of felony of which the defendant stands convicted. As with other class two, three, and four felonies, the sentencing court must consider the existence of aggravating and mitigating circumstances surrounding the offense and the offender in choosing a particular term

within the presumptive range. Although the Act expressly forbids a sentence with a lower term that is less than the minimum of the presumptive range, it does not preclude the lower term of the defendant's indeterminate sentence from exceeding the presumptive range as the result of extraordinary aggravating circumstances. *See* § 18–1.3401(6). Subject to the express prohibition of section 1004(1)(a) against sentencing below the presumptive range, however, the lower term of a sex offender's indeterminate sentence must be fixed according to the provisions of the determinate sentencing scheme of section 18–1.3–401.

## IV.

 In addition to the lower term of the indeterminate sentence, the defendant challenged the sentencing court's consideration of certain testimony as a violation of his constitutional right to due process of law. At the sentencing hearing, the district court entertained testimony from family members of other children claiming to have been molested by the defendant. It did not, however, make any finding with regard to these other incidents or expressly rely on them in imposing its sentence.

 Within the range of sentences permitted by statute for a defendant's conviction, the discretion of courts to choose any particular sentence is, and has always been, extremely broad. *See People v. Newman,* 91 P.3d 369, 371 (Colo.2004). In imposing a sentence within that range, a court may consider not only the conduct with which the offender was expressly charged, but also unrelated criminal conduct and even aspects of his life that go beyond antisocial conduct. *Id.; see also Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (upholding "real offense" sentencing, in which all possible information concerning the defendant's life and characteristics is relevant).

 Beyond the range of information considered relevant to the exercise of a court's sentencing discretion, the kind and quality of information that may be considered in sentencing within the range statutori-

ly prescribed for the defendant's particular conviction is similarly broad. *Newman,* 91 P.3d at 372; *see also Williams,* 337 U.S. at 251, 69 S.Ct. 1079. Unless the sentence chosen by the court exceeds the statutory maximum for the defendant's conviction, and is therefore contingent upon the existence of some additional fact, sentencing is a matter of judicial discretion, which need not be predicated exclusively upon evidence that would be admissible at trial. While specific reliance upon basic assumptions about other convictions that turn out to be materially untrue have been disapproved, *Newman,* 91 P.3d at 372; *see, e.g., United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), and while defendants are entitled, as with the elements of an offense themselves, to a jury determination of any fact required for sentencing beyond the statutory maximum, *Lopez v. People,* 113 P.3d 713, 720 (Colo.2005), sentencing within the range statutorily authorized upon conviction alone is subject to review only for an abuse of discretion.

Although the lower term of a sex offender's sentence is a key determinant of his eligibility to be considered for parole, it does not represent the statutory maximum sentence for his offense. Because all convictions to which the Lifetime Supervision of Sex Offenders Act applies must include a maximum sentence equal to the remainder of the offender's natural life, the lower term of the sex offender's indeterminate sentence, whether or not it is beyond the presumptive range for the offender's particular class of felony, cannot constitutionally entitle him to a jury determination of sentencing factors. *See State v. Clarke,* 156 Wash.2d 880, 134 P.3d 188 (2006); *People v. Drohan,* 475 Mich. 140, 715 N.W.2d 778, 792 (2006); *State v. Abdullah,* 184 N.J. 497, 878 A.2d 746 (2005); *State v. Stover,* 140 Idaho 927, 104 P.3d 969 (2005); *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044 (2004); *Commonwealth v. Smith,* 863 A.2d 1172 (Pa.Super.2004). *Cf. Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *Lopez,* 113 P.3d 713. It is therefore not inappropriate for a sentencing court to consider any relevant information, including allegations of abuse con-

cerning uncharged victims, in determining where to fix the lower term of a sex offender indeterminate sentence.

## V.

Because the minimum term of the indeterminate sentence imposed in this case exceeded twice the presumptive sentence for a class four felony, the sentence was illegal. The judgment of the court of appeals is therefore reversed and the case is remanded with directions to return it for resentencing consistent with this opinion.

Justice EID does not participate.