2017 CO 110

**Ervin ISOM, Petitioner/Cross-Respondent**

**v.**

**The PEOPLE of the State of Colorado, Respondent/Cross-Petitioner.**

**Supreme Court Case No. 15SC714**

Supreme Court of Colorado.

December 18, 2017

Attorneys for Petitioner/Cross-Respondent: The Noble Law Firm, LLC Antony Noble Lakewood, Colorado

Attorneys for Respondent/Cross-Petitioner: Cynthia H. Coffman, Attorney General Wendy J. Ritz, First Assistant Attorney General Denver, Colorado

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶1. Ervin Isom was convicted of sexual assault on a child, adjudicated a habitual sex offender against children, and sentenced to an indeterminate term of forty years to life. We address the legality of Isom's sentence, specifically whether the applicable sentencing statutes impose a maximum on the minimum end of indeterminate sentences for defendants adjudicated habitual sex offenders against children.[1] We hold that to calculate the maximum permissible minimum end of

1. We granted certiorari to review the following issues:

   1. Whether section 18-3-412(2), C.R.S. (2014) and section 18-1.3-1004(1)(c), C.R.S. (2014) authorize a court to sentence an habitual sex offender against children to an indeterminate prison sentence with a lower term of up to six times the maximum in the presumptive range if the court finds extraordinary aggravating circumstances under section 18-1.3-401, C.R.S. (2014).

2. Whether the court of appeals erred in reading the habitual sex offender against children sentencing provisions to: create a sentencing range for the lower term of the indeterminate sentence of three times the maximum of the presumptive range to six times the presumptive maximum; and require a finding of extraordinary aggravating circumstances before a trial court may impose a sentence with a lower term greater than three times the maximum of the presumptive range.

an indeterminate sentence for a defendant sentenced as a habitual sex offender against children, trial courts must triple the maximum of the presumptive range for the offense and may then double the resulting figure if the court finds extraordinary aggravating circumstances under section 18-3-401(6), C.R.S. (2017). Hence, we affirm the court of appeals and conclude that the bottom end of Isom's indeterminate sentence must be no lower than eighteen years, and may be extended up to thirty-six years if the trial court finds extraordinary aggravating circumstances.[2] We thus vacate Isom's sentence of forty years to life and remand for resentencing.

## I. Facts and Procedural History

¶2 A jury found Isom guilty of sexual assault on a child, which carries a maximum presumptive sentence of six years. After an evidentiary hearing, the trial court found that Isom was a habitual sex offender against children and sentenced him under the habitual sex offender statute. Concluding that the bottom end of the enhanced sentence did not have a maximum, the trial court sentenced Isom to an indeterminate term of forty years to life on that charge.

¶3 Isom filed a direct appeal, raising a number of arguments unrelated to the issues now before us. The court of appeals rejected those arguments and affirmed his conviction and sentence. People v. Isom, 140 P.3d 100 (Colo. App. 2005).

¶4 Isom later filed a Crim. P. 35(a) motion, arguing that the forty-years-to-life sentence was illegal because the maximum permissible sentence for his offense was eighteen years to life. The court of appeals agreed with Isom that his sentence was illegal, but it concluded that thirty-six years to life was the maximum permissible sentence for his offense. People v. Isom, 2015 COA 89, ¶ 34, 410 P.3d 589. The court of appeals noted that the statute governing aggravated sentences for habitual sex offenders against children does not appear to impose a maximum for the bottom

end of an enhanced, indeterminate sentence. Id. at ¶ 14. But it applied this court's holding in Vensor v. People, 151 P.3d 1274 (Colo. 2007), to conclude that the felony sentencing statutory scheme as a whole limited Isom's sentence to thirty-six years to life. Isom, ¶¶ 20–29. We granted certiorari and now affirm.

## II. Standard of Review

¶5 Statutory interpretation is a question of law that this court reviews de novo. Hunsaker v. People, 2015 CO 46, ¶ 11, 351 P.3d 388, 391.

## III. Analysis

¶6 Indeterminate sentencing for sex offenders in Colorado is governed by section 18-1.3-1004, C.R.S. (2017). The general sex offender sentencing provision in section 1004(1)(a) ("the general sex offender statute") provides for a sentence of at least the minimum of the presumptive range in the sentencing statute in section 18-1.3-401 ("the general sentencing statute") and for a maximum of life. For sex offenders whose offense constitutes a crime of violence, section 1004(1)(b) provides for a sentence of at least the midpoint in the presumptive range for the level of offense committed and a maximum of life. And for offenders eligible for sentencing as habitual sex offenders as defined by section 18-3-412, C.R.S. (2017), the habitual sex offender provision in section 1004(1)(c) ("the habitual sex offender statute") provides for a sentence of "at least" three times the presumptive maximum and a maximum of life. In this case, we must determine the limits for the lower end of a sentence imposed under the habitual sex offender statute in section 1004(1)(c).

¶7 The parties agree that because the conviction at issue here is a sex offense, the trial court properly sentenced Isom to an indeterminate sentence with a maximum sentence of life. But they dispute whether the trial court properly set the minimum end of Isom's indeterminate sentence at forty years.

---

**2.** The steps for calculating the maximum permissible bottom end of a habitual offender's indeterminate sentence can be expressed by the following equation: presumptive maximum (6 years) multiplied by the habitual offender multiplier (3) times the maximum aggravating circumstances factor (2) equals 36.

¶8 The People argue that Isom's sentence is proper because the statutory scheme allows a trial court to impose any minimum end equal to or greater than eighteen years. They assert that the habitual sex offender statute, section 1004(1)(c), requires only that the minimum sentence be "at least" triple the presumptive maximum—in this case six years—and does not impose an upper limit. The People's rationale is that the habitual sex offender statute is an entirely different sentencing scheme, not subject to limitations or conditions in the broader sentencing framework.

¶9 Isom, on the other hand, argues that his sentence is illegal because the statutory scheme requires the trial court to set the minimum value of his sentence at eighteen years. He notes that the habitual sex offender statute sets the enhanced lower limit at three times the presumptive maximum, but the general felony sentencing statute, section 18-1.3-401, sets the enhanced lower limit at two times the presumptive maximum. Rather than sextupling the presumptive maximum, Isom argues that the habitual sex offender statute trumps the general sentencing statute's limit and controls alone. In other words, since the habitual sex offender statute triples the minimum sentence, the general sentencing statute—which only allows a court to at most double the minimum sentence—is inapplicable. Therefore, Isom would have us set the lower bound of the indeterminate sentence precisely at three times the presumptive maximum and set the upper bound at life.

¶10 To determine Isom's range, we first look to the range for the underlying sexual-assault-on-a-child offense: two to six years. §§ 18-3-405(2), 18-1.3-401(1)(a)(V)(A), C.R.S. (2017). We then apply the habitual sex offender sentencing statute, which directs the trial court to sentence the defendant to at least three times the maximum of the presumptive range. In this case, that is six years multiplied by three; therefore, the sentence is "at least" eighteen years to life. The statute, however, does not specify a maximum bottom end to the indeterminate sentence. Hence, we must now determine whether there is a maximum permissible bottom end

of the indeterminate sentence for the charge. Simply stated, what does "at least" mean in this context?

¶11 Our analysis of this issue is guided by our prior decision in Vensor, where we examined a similar question regarding the general sex offender sentencing statute. That section of the sentencing statute, 1004(1)(a), is structured much the same way as the habitual sex offender statute, section 1004(1)(c), as it requires an indeterminate sentence with an upper bound of life. Specifically, section 1004(1)(a) modifies and enhances the presumptive minimum and maximum limits applicable to non-violent, non-habitual cases by providing for "an indeterminate term of at least the minimum of the presumptive range specified in section 18-1.3-401 for the level of offense committed and a maximum of the sex offender's natural life." § 18-1.3-1004(1)(a) (emphasis added). In Vensor, we deemed this language ambiguous because it raised the same question we face today: Is the lower bound of a sex offender's indeterminate sentence upwardly variable, and if so, to what extent? See Vensor, 151 P.3d at 1277 ("[T]he language of the statute itself is far from clear about the precise limitations intended for the lower term of an indeterminate sex offender's sentence.").

¶12 The court of appeals in Vensor found as the People would have us find here: That there is no upper limit on the minimum sentence. See People v. Vensor, 116 P.3d 1240, 1242 (Colo. App. 2005). We rejected that argument in Vensor, concluding that "[s]uch a cramped reading would effectively render the imposition of an indeterminate sentence discretionary with the sentencing court. Simply by imposing a sentence with an extremely long lower term, the sentencing court could collapse an ostensibly indeterminate sentence into a determinate one of life imprisonment...." Vensor, 151 P.3d at 1278. We determined that such a construction was not only logically inconsistent, but that it was also contrary to the legislative intent "to provide for treatment and extended supervision, rather than to punish sex offenders with terms of incarceration longer than those of other felons of the same class." Id.

¶13 In Vensor, we also considered whether the enhanced minimum had to be imposed as the bottom end of the range without any judicial discretion—the argument that Isom makes in the present case. We concluded that was also contrary to legislative intent because it would deprive the sentencing courts of any discretion whatsoever. Id. We rejected such a reading because it would "transfer all discretion in sentencing from the courts to the parole board." Id. If the lower limit can be neither boundless nor fixed, the Vensor court reasoned, there must be a limiting principle. See id. at 1279.

¶14 To find an upper limit for the minimum end of the sentence, we reasoned that the enhanced sentencing range was still subject to the broader statutory framework governing sentencing. Id. at 1279 ("[I]t would be extraordinary ... to understand words limiting the court's discretion at the lower end of the sentencing range to implicitly eliminate all other sentencing constraints, [and] there is particular reason to believe this was not intended of sex offender sentencing."). Those particular reasons were that the relevant legislative history strongly indicated that the General Assembly did not intend to more fundamentally alter the sentencing landscape for sex offenses. Id. ("Testifying before the House Judiciary Committee, Representative Norma Anderson, the Act's sponsor, emphasized three separate times that the Act was not intended to change the sentencing guidelines already in place under Colorado law."(citation omitted)). Having determined that the enhanced penalties were subject to other sentencing limits and procedures, we then examined these other provisions.

¶15 We looked to the "fundamental mechanism for felony sentencing," section 18-1.3-401. Vensor, 151 P.3d at 1279; see also id. at 1280 ("[T]he lower term of a sex offender's indeterminate sentence must be fixed according to the provisions of the determinate sentencing scheme of section 18-1.3-401."). Section 401(6) states that even when the court finds extraordinary aggravating circumstances, "in no case shall the term of sentence be greater than twice the maximum ... authorized in the presumptive range for the punishment of the offense." The Vensor court concluded that the minimum end of an enhanced sentence for a general sex offense was subject to a hard cap of twice the enhanced sentence. Id.

¶16 In this case, we follow Vensor and read the habitual sex offender statute, section 1004(1)(c), similarly. Section 18-1.3-1004(1)(c) is structured much the same as (1)(a), the general sex offender statute at issue in Vensor. It enhances the presumptive sentence to "an indeterminate term of at least three times the upper limit of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life." We read the first phrase—"at least three times the upper limit of the presumptive range"—as referring to the minimum length of time in a habitual offender's indeterminate sentence. We read the second phrase—"and a maximum of the sex offender's natural life"—as setting the maximum length of time in the indeterminate sentence.

¶17 The People's position here would lead to incongruous results because, as the Vensor court noted, a sentencing court could set the minimum to any length of time up to the defendant's natural life—a sentence of "life to life" which operates as a determinate sentence. See 151 P.3d at 1278. That would be contrary to the legislative scheme. It would punish sex offenders more harshly than other felons who have committed the same class of felony, and it would eliminate the role of the parole board. Similarly, Isom's position, where the court would have no discretion regarding the sentence, would be contrary to the legislative scheme allowing sentencing courts to consider particular aggravating or mitigating circumstances. Therefore, as in Vensor, we deem ambiguous the minimum sentence under the habitual sex offender statute, section 1004(1)(c), and we look to the broader sentencing framework for guidance.

¶18 As we did in Vensor, we focus on the generally applicable sentencing scheme in subsection 401 for guidance. Specifically, we focus on section 18-1.3-401(6), which gives a court the authority to enhance a sentence if it finds extraordinary aggravating circumstances:

If the court finds such extraordinary mitigating or aggravating circumstances, it

may impose a sentence which is lesser or greater than the presumptive range; except that <u>in no case shall the term of sentence be greater than twice the maximum</u> nor less than one-half the minimum term <u>authorized in the presumptive range for the punishment of the offense.</u>

18-1.3-401(6), C.R.S. (2017) (emphases added). We conclude that this provision limits the minimum end of a sex offender's indeterminate sentence to twice the presumptive maximum as already enhanced by the habitual sex offender statute, section 1004(1)(c). Because the enhanced minimum sentence of a habitual offender's indeterminate sentencing range is three times the presumptive maximum, twice that is six times the presumptive maximum. Therefore, upon a finding of extraordinary aggravating circumstances, a sentencing court may set the minimum end of a habitual sex offender's indeterminate sentence at any point between three and six times the presumptive maximum. Without a finding of extraordinary aggravating circumstances, the trial court must set the lower end of the sentence at triple the presumptive maximum only.

¶19 In conclusion, we hold that to calculate the maximum permissible term for the bottom end of an indeterminate sentence for a habitual sex offender, a trial court must triple the maximum of the presumptive range for the offense, pursuant to section 18-1.3-1004(1)(c), and then <u>may</u> double the resulting figure pursuant to section 18-3-401(6) if the court finds extraordinary aggravating circumstances. In that instance, the trial court retains discretion to impose a minimum sentence between the minimum tripling and the maximum sextupling of the presumptive maximum. In so doing, we give meaning to the phrase "at least" in section 18-1.3-1004(1)(c).

¶20 The sentencing statutes for sex offenders have been repeatedly amended over the years. Our decision today is an attempt to give effect to the legislative scheme while remaining consistent with general principles of statutory construction and sentencing.

## IV.  Application

¶21 Isom was convicted of sexual assault on a child, a class four felony with a presumptive range of two to six years, and was adjudicated a habitual sex offender against children. Section 18-1.3-1004(1)(c) requires trial courts to sentence habitual sex offenders against children to at least three times the maximum of the presumptive range; in this case, three times six is eighteen years. Applying section 18-1.3-401(6)'s language limiting aggravated sentences to twice the maximum of the authorized presumptive range, the maximum of the bottom end of a habitual-offender-enhanced indeterminate sentence shall not be greater than two times triple the presumptive maximum found in section 401; in this case, two times three times six equals thirty-six years. Therefore, the bottom end of Isom's indeterminate sentence is eighteen years. Upon resentencing, if the court makes a finding of extraordinary aggravating circumstances, the bottom end may be enhanced up to thirty-six years.

## V.  Conclusion

¶22 We affirm the judgment of the court of appeals, and we remand this case to that court with instructions to return the case to the trial court for resentencing consistent with this opinion.

JUSTICE MÁRQUEZ dissents.

JUSTICE MÁRQUEZ, dissenting.

¶23 Section 18-1.3-1004(1)(c), C.R.S. (2017), requires a court to sentence a defendant who has been adjudicated a habitual sex offender against children under section 18-3-412, C.R.S. (2017), to an indeterminate term of "at least three times the upper limit" of the presumptive sentencing range for the offense. Section 18-3-412(2) similarly requires such an offender to be sentenced to "not less than three times the upper limit of the presumptive range" for the offense. The question before us is whether Colorado's sentencing statutes impose a cap on the minimum end of the indeterminate sentence for such offenders. Maj. op. ¶¶ 1, 6. Relying on this court's decision in <u>Vensor v. People</u>, 151 P.3d 1274 (Colo. 2007), the majority concludes that

section 18-1.3-401(6), C.R.S. (2017), provides such a cap. Specifically, the majority reasons, although the court must triple the maximum of the presumptive range for the offense in accordance with section 18-1.3-1004(1)(c), it may then double that resulting figure under section 18-1.3-401(6)—if the court finds extraordinary aggravating circumstances. Maj. op. ¶ 18. Absent a finding of extraordinary aggravating circumstances, the majority further holds that the trial court must set the lower end of the term at exactly three times the maximum of the presumptive range for the offense, see id.; that is, the "floor" established by section 18-1.3-1004(1)(c) and section 18-2-412(2). In so doing, the majority fails to give effect to the words "at least" in section 18-1.3-1004(1)(c), and arrives at the very result we expressly rejected in Vensor. Id. at ¶ 13; Vensor, 151 P.3d at 1278.

¶24 To be sure, the policy concerns raised by the majority are legitimate. Absent a cap on the lower term of the indeterminate sentence, a sentencing court could theoretically set that lower term anywhere from three times the maximum presumptive range sentence all the way up to the defendant's natural life, or a sentence of "life to life." Maj. op. ¶ 17. But, however legitimate the majority's concerns with such sentencing discretion, our role is to apply the text of the statute. For better or worse, Colorado's sentencing statutes presently provide no cap on the lower term of the indeterminate sentence for habitual child sex offenders. The General Assembly certainly could establish one, but it has not done so, and in my view, the majority errs in construing section 18-1.3-401(6) to create one to fill a gap in legislation. Accordingly, I respectfully dissent.

¶25 When construing a sentencing statute, "[o]ur job is to effectuate the General Assembly's intent." See People v. Cross, 127 P.3d 71, 73 (Colo. 2006). To that end, we begin with the plain text of a statute because the "statutory text [is] the best indication of the General Assembly's intent." Denver Post Corp. v. Ritter, 255 P.3d 1083, 1091 (Colo. 2011). "If [the] statutory language is clear, we apply its plain and ordinary meaning." Hunsaker v. People, 2015 CO 46, ¶ 11, 351 P.3d 388, 391; see also People v. Diaz, 2015 CO 28, ¶ 12, 347 P.3d 621, 624.

¶26 Importantly, "[w]e do not add words to the statute or subtract words from it." Diaz, ¶ 12, 347 P.3d at 624 (quoting Turbyne v. People, 151 P.3d 563, 567 (Colo. 2007)). And we do not "imply words that simply are not there." Id. at ¶ 15, 347 P.3d at 625. For "[i]t is the General Assembly's prerogative to define crimes and prescribe punishments," not the court's. People v. Trujillo, 631 P.2d 146, 148 (Colo. 1981). When we rewrite a sentencing statute enacted by the General Assembly, "[t]he result is an invasion of the legislature's exclusive province to set punishments." People v. Hinchman, 196 Colo. 526, 589 P.2d 917, 920 (1978).

¶27 Accordingly, I begin with the relevant text. Isom was sentenced under section 18-1.3-1004(1)(c), which provides:

> If the sex offender committed a sex offense that makes him or her eligible for sentencing as an habitual sex offender against children pursuant to section 18-3-412, the district court shall sentence the sex offender to the custody of the department for an indeterminate term of at least three times the upper limit of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life.

(emphasis added). Standing alone, section 18-1.3-1004(1)(c) is susceptible of only one interpretation: habitual child sex offenders must be sentenced for an indeterminate term of "at least" three times the upper limit of the presumptive range; there is no cap on the lower term of the indeterminate sentence. Section 18-3-412(2) similarly provides that a court shall sentence an habitual sex offender against children to a term of "not less than three times the upper limit of the presumptive range" for such an offender's second or subsequent felony sexual offense.

¶28 According to the majority, to read section 18-1.3-1004(1)(c) to mean what it says "would be contrary to the legislative scheme" because it would permit a sentencing court to impose a sentence of "life to life," which operates as a determinate sentence. Maj. op. ¶ 17. Consequently, the majority turns to the broader sentencing framework for guidance, id., as this court did in Vensor. But in my

view, Vensor does not support the result the majority reaches here.

¶29 In Vensor, the defendant's sentences for sexual assault on a child were governed by section 18-1.3-1004(1)(a), C.R.S. (2017), which requires an indeterminate term of "at least the minimum of the presumptive range" for the offense. Vensor, 151 P.3d at 1276–77 (quoting § 18-1.3-1004(1)(a)). Like section 1004(1)(c) at issue here, section 1004(1)(a) provides no cap on the minimum term of the defendant's indeterminate sentence. Id. at 1277–78. As the majority correctly observes, we reasoned in Vensor that the indeterminate sentences required by section 18-1.3-1004 remain subject to the broader statutory framework governing sentencing, and so we turned to the general sentencing provisions for additional guidance. We reasoned that the lower term of a sex offender's indeterminate sentence must be fixed according to the provisions of the determinate sentencing scheme of section 18-1.3-401. Maj. op. ¶ 14 (discussing Vensor, 151 P.3d at 1279–80). Observing that section 18-1.3-401 does not authorize sentencing to more than twice the maximum term of the presumptive range, we concluded that a sex offender whose sentence fell under section 18-1.3-1004(1)(a) must be given an indeterminate sentence consisting of a lower term of "at least the minimum of the presumptive range" (the floor provided in section 18-1.3-1004(1)(a)) but not more than twice the maximum of the presumptive range authorized for the offense (the upper limit set by section 18-1.3-401). Vensor, 151 P.3d at 1279. In short, for the sex offender sentencing scenario under section 18-1.3-1004(1)(a) at issue in Vensor, the general sentencing provisions provided a cap for the lower term of the defendant's indeterminate sentence.

¶30 Purporting to apply the logic of Vensor here, the majority again turns to section 18-1.3-401 for guidance. Maj. op. ¶ 18. Specifically, the majority focuses on section 18-1.3-401(6), which provides that where the court finds extraordinary aggravating circumstances, "in no case shall the term of sentence be greater than twice the maximum" of the presumptive range sentence authorized for the offense. Id. (quoting § 18-1.3-401(6)).

But unlike in Vensor, the "twice the maximum presumptive range" limit in section 18-1.3-401(6) logically cannot provide a cap for the lower term of Isom's indeterminate sentence because it is necessarily below the "floor" set by section 18-1.3-1004(1)(c) (requiring the sentencing court to impose a lower term of "at least three times the upper limit of the presumptive range" for a habitual child sex offender).

¶31 The majority nevertheless blends section 18-1.3-1004(1)(c) with section 18-1.3-401(6), concluding that section 18-1.3-401(6) "limits the minimum end of a sex offender's indeterminate sentence to twice the presumptive maximum as already enhanced by the habitual sex offender statute, section 1004(1)(c)." Maj op. ¶ 18 (emphasis added). By reading the words "as already enhanced by the habitual sex offender statute" into section 18-1.3-401(6), the majority essentially creates a new cap of six times the presumptive maximum sentence. Id. But that is not what section 18-1.3-401(6) says.

¶32 Instead, section 18-1.3-401(6) provides simply that, if a court finds extraordinary aggravating circumstances, the court may impose a sentence greater than the presumptive range, but "in no case shall the term of sentence be greater than twice the maximum ... authorized in the presumptive range" for the offense. § 18-1.3-401(6) (emphasis added). However, the only authorized "presumptive range" sentences in Colorado's sentencing statutes are found in section 18-1.3-401— not the indeterminate sentencing provisions in section 18-1.3-1004 for sex offenders. Indeed, section 18-1.3-1004 itself refers back to the "presumptive range" sentences "specified in section 18-1.3-401." § 18-1.3-1004(1)(a). In short, the majority apparently reads section 18-1.3-1004(1)(c) to establish the "presumptive range" sentence that can be doubled under section 18-1.3-401(6). But such an approach runs afoul of the plain text of both provisions, and adds words to section 18-1.3-401(6) that are not there. See Diaz, ¶ 15, 347 P.3d at 625 ("[I]n interpreting a statute, we must accept the General Assembly's choice of language and not add or imply words that simply are not there.")

¶33 Nor is it necessary here to try to reconcile the three-times-the-presumptive-maximum floor set by section 18-1.3-1004(1)(c) with the two-times-the-presumptive-maximum limit established in section 18-1.3-401(6). To the extent these two sentencing provisions conflict, section 18-1.3-1004(1)(c) controls in this case, as it is both the more specific provision of the two, and the more recently enacted.[1] See § 2-4-205, C.R.S. (2017) (if a conflict between statutory provisions is irreconcilable, the more specific provision governs); § 2-4-206, C.R.S. (2017) ("If statutes enacted at . . . different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date."); Jenkins v. Panama Canal Ry. Co., 208 P.3d 238, 241–42 (Colo. 2009).

¶34 The majority acknowledges that its new cap applies only upon the court's finding of extraordinary aggravating circumstances. Maj. op. ¶ 18. It then summarily concludes that "without a finding of extraordinary aggravating circumstances, the trial court must set the lower end of the sentence at triple the presumptive maximum only." Id. In my view, this approach fails to give any effect to the words "at least" in section 18-1.3-1004(1)(c), and in depriving the court of any sentencing discretion, it arrives at the very result we expressly rejected in Vensor, as the majority's own discussion of Vensor appears to acknowledge. Id. at ¶ 13; Vensor, 151 P.3d at 1278 ("[T]he words 'at least' [in section 18-1.3-1004(1)(a) ] cannot be construed, consistent with other indicators of legislative intent, to require a lower term fixed precisely at the [floor established by section 18-1.3-1004(1)(a) ]" because "[s]uch an interpretation would effectively deprive sentencing courts of any discretion whatsoever").

¶35 The majority raises several valid reasons to amend, or at least to clarify, sentencing laws regarding habitual child sex offenders. But such concerns are "appropriately directed at the legislature, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme." Ewing v. California, 538 U.S. 11, 28,

123 S.Ct. 1179, 155 L.Ed.2d 108 (2003). In the meantime, I believe we must apply section 18-1.3-1004(1)(c) as written.

¶36 In Isom's case, this means his class four felony resulted in a presumptive range sentence of two to six years. Isom was adjudicated a habitual sex offender against children under section 18-3-412. Therefore, under section 18-1.3-1004(1)(c), the sentencing court was required to impose an indeterminate term of "at least three times the upper limit of the presumptive range" (here, eighteen years) up to his natural life. Although admittedly harsh, Isom's indeterminate sentence of forty years to life was lawful under Colorado's current sentencing scheme. Accordingly, I respectfully dissent.

---

1. The General Assembly amended 18-1.3-1004(1)(c) to add the "three times" language in 2000. Ch. 78, sec. 1, §§ 18-3-412(2), 16-13-804(1)(c), 2000 Colo. Sess. Laws 249–50. The current version of section 18-1.3-401(6) dates back to 1979. Ch. 157, sec. 16, § 18-1-105(6), 1979 Colo. Sess. Laws 664, 669. Thus, section 18-1.3-1004(1)(c) controls.