In re the PEOPLE of the State
of Colorado, Plaintiff

v.

Richard E. NEWMAN, Defendant.

No. 03SA320.

Supreme Court of Colorado,
En Banc.

May 24, 2004.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, CO, Ralph B. Rhodes, Burke & Neuwirth, P.C., Dean S. Neuwirth, Denver, CO, Attorneys for Plaintiff.

David Thomas, Jefferson County District Attorney, Dennis Hall, Jefferson County Senior Deputy District Attorney, Eric Nelson, Jefferson County Special District Attorney, Attorneys for Defendant.

Justice COATS delivered the opinion of the court.

Richard Newman, a criminal defendant in the underlying prosecution, petitioned pursuant to C.A.R. 21 for relief from the trial court's order sentencing him to four years in prison for the storage of hazardous waste without a permit. Newman's initial six-year sentence had been reversed because it exceeded the statutorily authorized range for that offense. In resentencing him, the court openly relied on evidence that his operations had, over a number of years, also caused substantial injury by spilling a great deal of hazardous waste. Newman's separate conviction of felony disposal for that conduct had been reversed as barred by the applicable statute of limitations.

We issued our rule to show cause. Because the defendant's four-year sentence for the storage of hazardous waste was not itself illegal; was not imposed in an illegal manner; and did not amount to an abuse of the sentencing court's discretion, the rule is discharged.

## I.

In 1997, Richard E. Newman was indicted for and subsequently convicted of feloniously storing and disposing of hazardous waste, in violation of section 25–15–310, 8 C.R.S. (2003). Both offenses stemmed from his activities as a supervisor and ultimately President of Thoro Products Company, Inc., a cleaning products manufacturer with a twenty-year-long business relationship with Dow Chemical Company.[1] His conviction for felony disposal was reversed because prosecution for the conduct alleged in that charge was barred by the applicable statute of limita-

tions. See People v. Thoro Prods. Co., Inc., 45 P.3d 737, 741–44 (Colo.App.2001), aff'd, 70 P.3d 1188, 1192 (Colo.2003). His conviction for felony storage was upheld on appeal; however, the court of appeals found that a four-year term of incarceration was the maximum sentence permitted by statute for that offense. Accordingly, it reversed the defendant's original six-year sentence and remanded for resentencing.

On remand, the original trial judge conducted a second sentencing hearing. As its sole witness, the defense qualified the attorney for Newman and Thoro in their civil proceedings as an expert in hazardous waste regulation and compliance. Although he gave a detailed explanation, in the form of an offer of proof on behalf of defense counsel, of what he would say, his proposed testimony to the effect that Newman should have been convicted at most of misdemeanor storage, was excluded as irrelevant.[2] The prosecution offered the testimony of three employees of the Environmental Protection Agency with regard to various aspects of the investigation, the extent of the damage caused by the defendants, and the plans for and costs of cleaning it up. The defendant was also given and took the opportunity to make a personal statement.

In a lengthy order, expressly incorporating its findings from the original sentencing hearing,[3] the court resentenced Newman to four years in the custody of the Colorado Department of Corrections. After taking account of Newman's personal background and community involvement, and noting the absence of any prior criminal record, the court turned to the facts of this case. Making clear that it considered itself not only permitted, but in fact obliged, to also account for Thoro's decades-long practices of mishandling hazardous waste, which were the subject of the trial, the sentencing court concluded that Newman had firsthand knowledge of the large amounts of hazardous chemicals that were regularly leaked and spilled onto

---

1. Newman was also charged with but acquitted of criminal mischief.

2. Newman included a similar challenge to his felony conviction in this original proceeding, which we do not address.

3. Newman has not included a record of the original hearing or the court's findings in his supporting documents.

the ground at Thoro but that he did virtually nothing to prevent the spillage or clean it up.[4] Rather than laziness or carelessness, the court understood the evidence to demonstrate a calculated decision by both the individual and the corporate defendant to put their neighbors at risk, in order to maximize their own profits.

The sentencing court indicated its awareness of the specific aggravating and mitigating factors to be considered in imposing sentence for hazardous waste crimes by addressing each in turn.[5] Once again it addressed the seriousness, intentionality, and impact of the violation, as well as the recalcitrance of the defendants and economic benefit they derived, in terms of their practices as a whole rather than confining its analysis to the storage of hazardous waste for which they actually stood convicted. With regard to the potentially mitigating factors specified in the hazardous waste statute, the court interpreted the evidence to demonstrate that Newman failed to cooperate with the EPA; failed over a number of years to fully disclose the information requested by the EPA; and failed to institute a regularized and comprehensive environmental compliance program.

Finally the court turned to the goals of criminal sentencing generally. It expressly noted its duty to consider the need to appropriately punish the convicted offender, to ensure fair and consistent treatment of all convicted offenders, to prevent crime and promote respect for the law, and to promote rehabilitation.[6] Because it considered neither defendant likely, under the circumstances, to engage in the same kind of conduct in the future, it found the need for rehabilitation to be minimal. The court considered significant, however, Newman's lack of remorse, as evidenced by his lack of cooperation in the investigation and clean-up effort and by his unwillingness to help remediate the substantial damages he and Thoro had caused. Finally, the court considered of particular importance the need for behavior modification, or deterrence, by making clear

to others that the kind of behavior engaged in by Newman would not, in the long run, be profitable.

Rather than appealing to the court of appeals, Newman petitioned this court pursuant to C.A.R. 21, asserting a number of reasons why the sentencing court's consideration of his disposal practices should be held improper and his four-year sentence disapproved.

## II.

■ Exercise of the supreme court's original jurisdiction is entirely within its discretion. *In re People v. Lee*, 18 P.3d 192, 194 (Colo.2001). Relief pursuant to C.A.R. 21 is appropriate to remedy a lower court's abuse of discretion where appellate review would be inadequate. *Id.* Although an appeal of the propriety of a sentence, as permitted by section 18-1-409, 6 C.R.S. (2003), or a challenge to the legality of a sentence, as permitted by Crim. P. 35, usually provides an adequate remedy, we have chosen to exercise our original jurisdiction in this case largely because the contentions of the criminal defendant challenge the trial court's compliance with mandates already issued by the appellate courts in this same case and, as a matter of first impression, question the scope of a trial court's discretion in sentencing for crimes defined outside the criminal code.

## III.

■ Subject to constitutional limitations not at issue here, it is the prerogative of the legislature to define crimes and prescribe punishments. *Martinez v. People*, 69 P.3d 1029, 1031 (Colo.2003). Within the penalty ranges established by the legislature, the discretion of courts to choose particular sentences has historically been extremely broad, including consideration of not only the conduct with which the offender was expressly charged, but also his actual conduct in committing the charged offense, his unrelated criminal conduct, and even aspects of his life

---

4. A more detailed history of the defendant's practices and the injuries resulting from them appears at *Thoro Prods.*, 70 P.3d at 1190–1192.

5. See § 25–15–310(5)

6. See § 18–1–102.5, 6 C.R.S. (2003).

that go beyond antisocial conduct. *See Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (upholding what has come to be referred to as "real offense" sentencing); *see generally* 5 LaF'ave et al., Criminal Procedure § 26.4(b) (2d ed. 1999 & Supp.2004). Colorado has not deviated from this approach, instead specifically endorsing broad purposes to be served by criminal sentencing, which require consideration of "the nature of the offense, the character of the offender, and the public interest." *See* § 18–1–102.5 and 409(1), 6 C.R.S. (2003); *see also People v. Watkins,* 200 Colo. 163, 167, 613 P.2d 633, 636 (1980).

■ In addition to the range of information considered relevant to the exercise of a court's sentencing discretion, the kind and quality of information that may be considered is similarly broad. *See Williams,* 337 U.S. at 251, 69 S.Ct. 1079 (sentencing information not limited to admissible evidence). While specific reliance on basic assumptions about other convictions that turn out to be materially untrue has been expressly disapproved, *see, e.g., United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), it is clear that in evaluating the nature of an offense and the character of the offender, a sentencing court is not prohibited from considering conduct for which the offender was never charged, *United States v. Grayson,* 438 U.S. 41, 45, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *Anderson v. People,* 139 Colo. 46, 337 P.2d 10 (1959); *see generally* LaF'ave § 26.4(b) at 753; conduct for which charges were filed but later dismissed as part of a plea agreement, *People v. Lowery,* 642 P.2d 515, 518 (Colo.1982); or even, in some circumstances, conduct for which he was charged and subsequently acquitted, *United States v. Juarez–Ortega,* 866 F.2d 747, 749 (5th Cir.1989); *United States v. Atkins,* 480 F.2d 1223, 1224 (9th Cir.1973).

While it is clearly the prerogative of the legislature to more particularly limit the exercise of a court's sentencing discretion, even within the range of sanctions it has prescribed for a particular offense, *see United States v. Litteral,* 910 F.2d 547 (9th Cir.1990) (upholding federal sentencing guidelines), it has not done so with regard to hazardous materials offenses. The general assembly has chosen to proscribe certain conduct related to the handling of hazardous waste, in provisions situated outside the criminal code, and it has mandated consideration of certain aggravating and mitigating factors that are particularly relevant to this class of offenses. *See* § 25–15–310(5).[7] The statute, however, in no way purports to alter the broad purposes to be served by criminal sentencing or limit the broad range of information to be considered by the sentencing court. Were the intent of this non-exclusive list of factors not otherwise clear, it expressly endorses consideration of "any other aggravating or

---

7. The statute provides:

The court shall consider the factors contained in paragraphs (a) to (i) of this subsection (5) in determining the amount of any criminal sanction to be imposed pursuant to this article. The factors contained in paragraphs (f), (g), and (h) of this subsection (5) shall be mitigating factors and may be applied, together with other factors, to reduce or eliminate sanctions or penalties. Such factors are:

(a) The seriousness of the violation;

(b) Whether the violation was intentional, reckless, or negligent;

(c) The impact upon or the threat to the public health or the environment as a result of the violation;

(d) The degree, if any, of recalcitrance or recidivism upon the part of the violator;

(e) The economic benefit realized by the violator as a result of the violation;

(f) The voluntary and complete disclosure by the violator of such violation in a timely fashion after discovery and prior to the department's knowledge of the violation, provided that all reports required pursuant to state environmental law have been submitted as and when otherwise required;

(g) Full and prompt cooperation by the violator following disclosure of a violation, including, when appropriate, entering into in good faith and implementing a legally enforceable agreement to undertake compliance and remedial efforts;

(h) The existence of a regularized and comprehensive environmental compliance program or an environmental audit program that was adopted in a timely and good faith manner and that includes sufficient measures to identify and prevent future noncompliance; and

(i) Any other aggravating or mitigating circumstances.

mitigating circumstances." *See* § 25–15–310(5)(i).

Nor does the decision to locate hazardous waste offenses outside of Title 18 (Colorado Criminal Code) suggest any retreat from the broad discretion afforded courts in criminal sentencing generally. The provisions of the criminal code, by their own terms, govern the "punishment for any offense defined by any statute of this state, whether in this title or elsewhere." § 18–1–103(1). The specific provision of the code permitting "appellate review of the propriety of a sentence, having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based," expressly applies to all sentences "following a conviction of any felony." *Id.* The general assembly has therefore made abundantly clear that its broad statement of purposes for criminal sentencing and its recognition of the kinds of information considered relevant to those purposes apply to all felony sentences, without regard to the organization of the revised statutes.

## IV.

■ Section 25–15–310 proscribes the treatment, storage, and disposal of certain hazardous wastes, done without or in violation of the conditions of a permit, as a single, unclassified felony, punishable by imprisonment for up to four years. Newman was charged with and convicted of separate acts of storage and disposal. On remand, the trial court dismissed Newman's conviction for disposal and expressly resentenced him only for storage, as mandated by the appellate courts. Because the trial court resentenced Newman to a single term within the statutorily prescribed range for felony storage (the offense of which he stood convicted), its sentence was not facially illegal.

■ Similarly, because Newman was convicted of and sentenced for acts of storage, committed after they were criminalized and prosecuted within the time frame permitted by section 25–15–308(4), his sentence violated neither the constitutional prohibition against *ex post facto* laws nor the applicable statute of limitations. Criminal sentencing may take into account any conduct of an offender that is relevant to an understanding of his character, without regard to its criminality. *See United States v. Marines,* 535 F.2d 552, 554 (10th Cir.1976); *see also Anderson,* 139 Colo. at 48, 337 P.2d at 11. In any event, it is well-established that *ex post facto* concerns do not bar even the enhancement of penalties for prior conduct, as long as subsequent conduct, as to the criminality of which the offender was on notice, is necessary to trigger the sanction. *See Gasper v. Gunter,* 851 P.2d 912, 917 (Colo.1993); *People v. Billips,* 652 P.2d 1060, 1064 (Colo. 1982). By the same token, a limitations period on the prosecution of particular conduct clearly does not prohibit consideration of that conduct for other purposes, including the determination of appropriate sentences for other criminal convictions. *See United States v. Stephens,* 198 F.3d 389, 391 (3d Cir.1999)(citing seven other circuits that have construed the federal sentencing guidelines to permit the sentencing court to consider conduct that is not chargeable due to the statute of limitations), *United States v. Neighbors,* 23 F.3d 306, 311 (10th Cir.1994) ("Statutes of limitations play no role in the sentencing phase of a criminal proceeding."); *United States v. Doyle,* 348 F.2d 715 (2nd Cir.1965) (holding that because the sentencing court is not strictly limited in imposing sentence to the framework of a charge on which the defendant is convicted, it may consider a dismissed charged even though, as a result of the statute of limitations, no further prosecution can occur).

■ Although the sentence imposed upon Newman for felony storage was neither inherently illegal nor imposed illegally—in reliance upon false information or otherwise—the question remains whether a four-year prison sentence for this particular offense, committed by this particular offender, under these particular circumstances, amounted to an abuse of the court's sentencing discretion. This court has often made clear that sentencing is by its very nature discretionary and a judge has wide latitude in arriving at a synthesis which is reflective of the interests of society and the defendant. *See People v.*

*Hotopp,* 632 P.2d 600, 601 (Colo.1981); *People v. Scott,* 630 P.2d 615, 617 (Colo.1981); *People v. Martinez,* 628 P.2d 608 (Colo.1981). Its decision will therefore not be overturned on appeal absent a showing that its wide latitude was marked by an abuse of discretion. *Hotopp,* 632 P.2d at 601; *Triggs v. People,* 197 Colo. 229, 591 P.2d 1024 (1979). In particular, the denial of probation is, by legislative decree, not subject to appellate review at all. *See* § 18–1.3–104(1)(a); *see also People v. Manley,* 707 P.2d 1021, 1022 (Colo.App.1985).

On remand in this case, the trial court conducted a second sentencing hearing, at which it allowed both parties to present evidence; heard the arguments of counsel; permitted a second allocution by Newman; made specific findings with regard to aggravating and mitigating factors; explained why it rejected probation as inappropriate; and articulated its rationale for the sentence it ultimately imposed, in terms of the statutorily prescribed goals of sentencing. While the court imposed the maximum sentence permitted for a single incident of felony treatment, storage, or disposal of hazardous waste, its sentence could not be characterized as long in real terms, and in any event, its reasons where clearly expressed. *Cf. Martinez,* 628 P.2d at 613 (remanding defendant's twenty-one to twenty-five-year burglary sentence because sentencing court failed to comply with the requirement that "where lengthy sentence is imposed, it is necessary that record contain sufficient specificity with respect to reasons for its imposition," to aid informed appellate review).[8] Although the court's sentence was dictated in large part by conduct of the defendant other than that required to satisfy the elements of the storage charge of which he stood convicted, all of the conduct it considered involved the treatment, storage, or disposal of hazardous waste by Thoro in which Newman played a significant role, and all of the conduct was suffi-

ciently connected to the charged storage incident to be joined with it for trial. *See* Crim. P. 8(a)(2).[9]

Perhaps most importantly, however, the court's deterrence rationale, which it ultimately gave prominence in imposing sentence, was not unreasonable in light of the calculated, economic choice the court attributed to Newman. The unlawful storage for which Newman was actually convicted, much like the repeated and uncorrected occurrences of spillage on which the court relied, was but one manifestation of what the court found, with record support, to be a general practice or policy at Thoro. Where rational choices aimed at maximizing profit are at issue, it is not unreasonable to assume that the future conduct of others can be affected by the imposition of strong disincentives. Moreover, placing others seriously at risk for profit clearly merits punishment, in the public interest.

In light of the dangers to public health and the literally millions of dollars of property damage resulting from the defendant's practices, the trial court determined that the need for deterrence of similar choices by others in the future outweighed the harshness of a prison sentence. Under these circumstances, we cannot say that the wide latitude of the sentencing court was marked by an abuse of discretion.

## V.

Because Newman's four-year sentence for the storage of hazardous waste was not itself an illegal sentence; was not imposed in an illegal manner; and did not amount to an abuse of the sentencing court's discretion, the rule is discharged.

---

8. The defendant could be released after serving as little as sixteen months in prison. *See* § 17–22.5–403 & 405, 6 C.R.S. (2003).

9. The rule permits the joinder of:
   Two or more offenses ... charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.