The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 14, 2023

**2023COA120**

**No. 21CA1147, *People v. Wells-Yates* — Criminal Law —
Sentencing — Punishment for Habitual Criminals;
Constitutional Law — Eighth Amendment — Cruel and Unusual
Punishments — Proportionality Review — Gravity or
Seriousness of Predicate Offenses**

A division of the court of appeals addresses what facts and

evidence a district court may consider in assessing the gravity or

seriousness of a predicate offense for purposes of an abbreviated

proportionality review of a habitual criminal sentence. The division

holds that the district court exercises discretion to determine what

evidence is appropriate and may consider arrest warrant affidavits

as one such type of evidence. But the focus of the inquiry remains

the gravity or seriousness of the offense of conviction. Although the

court may consider facts beyond the elements of the offense, such

additional facts do not substitute for the predicate offense itself.

Applying that standard to this case, the division concludes that the defendant's sixty-four-year habitual criminal sentence for possession with intent to distribute methamphetamine — based on two prior convictions for possession of methamphetamine and one for possession with intent to distribute methamphetamine — raises an inference of gross disproportionality. The division concludes that the defendant's other sentences do not raise that inference.

COLORADO COURT OF APPEALS                                        2023COA120

---

Court of Appeals No. 21CA1147
El Paso County District Court No. 12CR2355
Honorable David L. Shakes, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Belinda May Wells-Yates,

Defendant-Appellant.

---

SENTENCE AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE SCHOCK
Tow and Graham*, JJ., concur

Announced December 14, 2023

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Shann Jeffrey, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2023.

¶ 1    This case returns to us four years after our supreme court's seminal opinion in the same case regarding proportionality review of a habitual criminal sentence.  In that opinion, *Wells-Yates v. People*, 2019 CO 90M, the court provided extensive guidance on how to conduct that review.  But it did not decide whether the sentences imposed on defendant, Belinda May Wells-Yates, in this case were unconstitutional.  It instead returned the case to the district court to conduct a new proportionality review in light of its opinion.

¶ 2    Now, after the district court upheld the sentences, Wells-Yates asks us to decide that question, as well as a preliminary one the supreme court did not address: What facts and evidence may a court consider in conducting an abbreviated proportionality review?

¶ 3    We hold that a district court has discretion to determine what evidence it considers in assessing the facts and circumstances of a predicate offense and that arrest warrant affidavits may serve as one such type of evidence.  In exercising that discretion, however, the court must remain mindful that its purpose is to assess the gravity or seriousness of the offense of conviction.  Although the court may look beyond the elements of that offense to the facts and circumstances of the offense *as committed* — including to facts that

1

would constitute a greater or different offense — those facts may not substitute for consideration of the predicate offense itself.

¶ 4    We further conclude that Wells-Yates's sixty-four-year sentence for possession with intent to distribute methamphetamine raises an inference of gross disproportionality sufficient to warrant an extended proportionality review, but that her other sentences do not. We therefore reverse the sentence for possession with intent to distribute and remand for the district court to conduct an extended proportionality review of that sentence. We otherwise affirm.

## I.    Background

¶ 5    Wells-Yates was convicted by a jury of second degree burglary (of a dwelling), conspiracy to commit second degree burglary (also of a dwelling), theft, possession with intent to distribute methamphetamine, and four counts of identity theft.

¶ 6    Six of the eight counts — all but possession with intent and one count of identity theft — stemmed from Wells-Yates's burglary of a home that had been evacuated due to the approaching Waldo Canyon wildfire. *See Wells-Yates*, ¶ 30 (summarizing underlying facts). When Wells-Yates was arrested, she had "a bag containing a small amount of methamphetamine, a set of scales, small plastic

bags, and other drug paraphernalia," which led to the possession with intent count. *Id.* The fourth identity theft count arose from Wells-Yates's sale of a stolen birth certificate, social security card, and driver's license to an undercover officer. *Id.* at ¶ 29.

¶ 7 Wells-Yates was adjudicated a habitual criminal based on three prior felony convictions: a 1996 conviction for possession with intent to distribute methamphetamine, a 1997 conviction for possession of methamphetamine, and a 1999 conviction for possession of methamphetamine. *Id.* at ¶ 31. The habitual criminal adjudication dictated a sentence for each offense of four times the maximum of the presumptive range. *Id.* at ¶ 32; § 18-1.3-801(2)(a)(I)(A), C.R.S. 2023. The court sentenced Wells-Yates accordingly to sixty-four years for possession with intent,[1] forty-eight years for second degree burglary, and twenty-four years for each of the other counts. The sentences for second degree burglary and the fourth identity theft count were ordered to run consecutively, with all other sentences running concurrently.

---

[1] The district court originally sentenced Wells-Yates to forty-eight years for possession with intent to distribute, but it corrected that sentence to sixty-four years on remand, as directed by the supreme court. *See Wells-Yates v. People*, 2019 CO 90M, ¶ 32 n.9.

¶ 8     Wells-Yates requested an abbreviated proportionality review of her sentences.  The district court conducted that review and concluded that the sentences were not unconstitutionally disproportionate.  A division of this court affirmed on appeal.

¶ 9     The supreme court then reversed the division's decision in an opinion that clarified several issues relating to the proportionality review framework.  But the court did not decide whether Wells-Yates's sentences were unconstitutional.  *Wells-Yates*, ¶ 74.  Instead, it remanded the case to the district court to conduct a new proportionality review consistent with the opinion.  *Id.* at ¶ 76.

¶ 10    On remand, the district court held an evidentiary hearing and issued a written order, again concluding that none of the sentences created an inference of gross disproportionality.  At the hearing, the district court admitted and considered, over Wells-Yates's objection, arrest warrant affidavits for Wells-Yates's predicate convictions.

## II.    Analysis

¶ 11    Wells-Yates argues that each of her sentences raises an inference of gross disproportionality, thus requiring an extended proportionality review of those sentences.  She further contends that, by concluding otherwise, the district court violated the

supreme court's mandate by (1) failing to consider the relative seriousness of her offenses based on objective criteria and (2) failing to consider the nature and effect of legislative changes.

¶ 12 We reject Wells-Yates's framing of this issue as a violation of the mandate rule. *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 24. The supreme court's mandate in this case was for the district court to conduct a new abbreviated proportionality review consistent with the supreme court opinion. *Wells-Yates*, ¶ 76. The district court did that. In doing so, it expressly considered several of the objective factors of seriousness identified in *Wells-Yates*, including changes in the relevant statutes concerning drug offenses and habitual criminal sentencing.

¶ 13 What Wells-Yates really challenges is the district court's *conclusion* that her sentences do not give rise to inferences of gross disproportionality — a point the supreme court did not decide. *Id.* at ¶ 75. Thus, although we conclude that the district court complied with the supreme court's mandate, we will proceed to consider Wells-Yates's substantive challenge to its conclusions.

## A.	Proportionality Framework

¶ 14	Both the United States and Colorado Constitutions prohibit "grossly disproportionate" sentences. *Wells-Yates*, ¶¶ 5, 10. Proportionality is a "foundational 'precept of justice'" that "dictates that the punishment should fit the crime." *Id.* at ¶ 1 (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)). That inquiry is not static but must take into account "the evolving standards of decency that mark the progress of a maturing society." *Id.* at ¶ 46 (quoting *Graham v. Florida*, 560 U.S. 48, 58 (2010)). "The standard itself remains the same, but its applicability must change as the basic mores of society change." *Graham*, 560 U.S. at 58 (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008)).

¶ 15	When a defendant challenges the proportionality of a sentence, the court must first conduct an abbreviated proportionality review. *Wells-Yates*, ¶¶ 7, 11. At this stage, the court must consider the gravity or seriousness of the offense and the harshness of the penalty to determine whether the sentence gives rise to "an inference of gross disproportionality." *Id.* at ¶¶ 7, 8, 11. If (and only if) it does, the court conducts an extended proportionality review, comparing the defendant's sentence to sentences for other

6

crimes in the same jurisdiction and sentences for the same crime in other jurisdictions to "validate [the] initial judgment" that the sentence is grossly disproportionate to the crime. *Id.* at ¶¶ 7, 8, 17 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)).

¶ 16 Habitual criminal sentences present unique proportionality concerns because they drastically increase the punishment for a crime and strip the sentencing court of its discretion. *Id.* at ¶¶ 19-20. Even so, the proportionality of such a sentence cannot be divorced from the defendant's history of recidivism. *Id.* at ¶ 23. Thus, in conducting an abbreviated proportionality review of a habitual criminal sentence, the court must consider (1) the gravity or seriousness of *all* the offenses in question — the triggering *and* predicate offenses; and (2) the harshness of the sentence on the triggering offense. *Id.* When there are multiple triggering offenses, the court reviews each sentence separately to determine "whether the corresponding triggering offense and the predicate offenses, considered together, are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate." *Id.* at ¶ 24.

¶ 17 Gross disproportionality is a question of law that we review de novo, "not a sentencing decision requiring deference to the trial

7

court." *Id.* at ¶ 35. Necessarily, then, the two subparts of that inquiry — the gravity or seriousness of the offense and the harshness of the penalty — are also questions of law that we review de novo. *See People v. Kennedy*, 2023 COA 83M, ¶¶ 26-31 (considering whether the defendant's offense was grave or serious after rejecting district court's conclusion that it was per se grave or serious). We defer to the district court's factual findings, including those concerning the facts and circumstances surrounding the offense, if they are adequately supported by competent evidence in the record. *People v. Mershon*, 874 P.2d 1025, 1035 (Colo. 1994), *abrogated on other grounds by Melton v. People*, 2019 CO 89, ¶ 18.

### B.     Facts and Evidence the Court May Consider

¶ 18     Before we conduct our abbreviated proportionality review, we must first address a threshold question: What evidence may a court consider in determining the facts and circumstances surrounding the triggering and predicate offenses? *Wells-Yates*, ¶ 75. Wells-Yates contends that a court may look only to the conviction itself and not to allegations in an arrest warrant affidavit that go

8

beyond the elements of the offense.[2]  The People, on the other hand, assert that a court may consider any information that it could consider at sentencing, including evidence of uncharged conduct, dismissed charges, and even conduct for which the defendant was acquitted.  *See People v. Newman*, 91 P.3d 369, 372 (Colo. 2004).

¶ 19     We disagree with the People that answering this question is as easy as looking to sentencing law.  The purpose of sentencing is to determine an appropriate sentence within the penalty ranges established by the legislature.  *Id.* at 371.  That decision, over which district courts exercise broad discretion, requires a holistic look at several factors that go beyond the offense — including the character of the offender, the risk of future criminal conduct, the potential for rehabilitation, the public interest, unrelated criminal conduct, and "even aspects of [the defendant's] life that go beyond antisocial

---

[2] At the proportionality hearing, defense counsel initially objected to the admission of the arrest warrant affidavits for the predicate offenses but then narrowed his objection to the court taking judicial notice of them, stating, "I'm not telling the court that it may not look at this, but for the court to take judicial notice of something is for the court to take it as a fact.  We are arguing that would be inappropriate."  We conclude that this objection, combined with the later objection to the court's consideration of facts beyond the offense of conviction, sufficiently preserved this argument.

conduct." *Id.* at 371-72; *see also People v. Linares-Guzman,* 195 P.3d 1130, 1137 (Colo. App. 2008); § 18-1-102.5, C.R.S. 2023.

¶ 20   Proportionality review, in contrast, is not a sentencing decision. *Wells-Yates,* ¶ 35. Its purpose is to determine whether the chosen (or prescribed) sentence is constitutional. That question — a legal one, not a discretionary one — turns solely on the severity of the offense and the harshness of the sentence. *Id.* at ¶¶ 11-14.

¶ 21   But we also disagree with Wells-Yates's view that the Sixth Amendment limits the court's consideration to the elements of the offense and other facts necessarily found by a jury or admitted by the defendant. *See Lopez v. People,* 113 P.3d 713, 723 (Colo. 2005); *Blakely v. Washington,* 542 U.S. 296, 301-05 (2004). That limitation applies to "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000); *see also Lopez,* 113 P.3d at 721. Proportionality review cannot justify a sentence that exceeds the statutory maximum authorized by the jury verdict or guilty plea. Instead, it asks whether a particular sentence *within the statutory range* for that offense is grossly disproportionate to the crime.

10

¶ 22    Thus, we look to our proportionality case law for guidance, beginning with *Wells-Yates.* In *Wells-Yates*, the supreme court explained that abbreviated proportionality review "entail[s] an analysis of the facts and circumstances surrounding [the triggering] offense and the facts and circumstances surrounding each" predicate offense. *Wells-Yates*, ¶ 75. And though abrogating *People v. Gaskins*, 825 P.2d 30 (Colo. 1992), on other grounds, the court cited *Gaskins* for the proposition that "the trial court is 'uniquely suited' to make these factual determinations." *Wells-Yates*, ¶ 75. *Gaskins* contemplated that "proportionality review may require factual findings concerning the crime, the level of violence, and the other factors *Solem* [*v. Helm*, 463 U.S. 277 (1983),] identified in evaluating the severity of the crimes in question." 825 P.2d at 38.

¶ 23    *Gaskins* elaborated on the district court's "discretion to control the character and scope of the evidence that is presented" as part of that factfinding process. *Id.* at 38 n.13. The trial court is "in the best position to evaluate, as the hearing progresses, the extensiveness of the factual inquiries necessary to make a fully informed and legally sound proportionality determination." *Id.*

11

> In some cases, for instance, it may be necessary that the trial court review part or all of the record of a trial in order to evaluate the seriousness of a prior offense. In others, a record of a providency hearing, a presentence investigation report, or other abbreviated summary of the facts underlying the conviction may provide adequate, reliable information for the purpose of proportionality review. The court, with the assistance of the parties, may devise other ways of obtaining the necessary information. The trial court should exercise its discretion to control evidentiary presentations to serve the dual goals of obtaining adequate information to assure an informed decision and conserving judicial resources by curtailing presentation of unnecessarily extensive evidence.

*Id.*

¶ 24    *Wells-Yates* and *Gaskins* make two things clear. First, in conducting an abbreviated proportionality review, a court may make factual findings that go beyond the fact of conviction. Second, the district court exercises broad discretion in determining what evidence it may consider in making those factual findings, so long as it is guided by the "dual goals" of ensuring adequate information while limiting unnecessarily extensive evidence. *Id.*

¶ 25    We decline Wells-Yates's invitation to constrain that discretion by imposing a categorical bar on the consideration of arrest warrant

12

affidavits for predicate offenses. *See People v. Patnode*, 126 P.3d 249, 261 (Colo. App. 2005) (considering police affidavit for predicate offense as part of proportionality review). We acknowledge the pitfalls of uncritically treating allegations in a police affidavit as fact — and we caution courts not to do so. *See United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014) (noting reliability concerns with police reports); *United States v. Johnson*, 710 F.3d 784, 789 (8th Cir. 2013) (same). But we also do not think a court *must* conduct a minitrial — replete with witnesses and admissible evidence — for every predicate offense. *See Wells-Yates*, ¶ 75 n.20 (noting that "in the vast majority of cases," review of the facts and circumstances of an offense "will not be time-consuming or burdensome").

¶ 26 Rather, in finding the facts and circumstances surrounding a predicate offense, a court may consider arrest affidavits as *one piece* of evidence, subject to being disputed or challenged like any other evidence. The reliability and weight to be afforded such an affidavit should be determined by the district court on a case-by-case basis.

¶ 27 But answering the question of what evidence the court may consider still leaves the question of what purpose the court may consider it for. *Wells-Yates* instructs that a court's task in

13

conducting an abbreviated proportionality review is to assess the gravity or seriousness of *the offense* — not the totality of the defendant's conduct or any other offense the defendant might have committed at or around the same time. *Id.* at ¶ 12; *cf. People v. Oldright*, 2017 COA 91, ¶ 17 (declining to treat dismissed charges as part of the facts and circumstances of the offense).[3] The inquiry must therefore be limited to those facts and circumstances that flesh out the offense for which the defendant was convicted.

¶ 28    We recognize that it will not always be easy to draw the line between the facts and circumstances of the offense and facts that go beyond that offense. But *Wells-Yates* offers an example that is particularly relevant here: the quantity of drugs. Possession of a large quantity of drugs may be grave or serious, while possession of

---

[3] In *People v. Austin*, 799 P.2d 408, 413 (Colo. App. 1990), a division of this court cited the rule that a *sentencing* court may consider dismissed charges and then stated, without analysis, that "it is appropriate for the court conducting the proportionality review to consider such factors." Not only did *Austin* predate *Wells-Yates* by nearly three decades, but it did not address the fundamental differences between sentencing and proportionality review that we describe above. Moreover, *Austin* did not consider the nature of any dismissed charges, making its reference to such charges dicta. *See id.* at 412-13. We therefore decline to follow this passing statement in *Austin*. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 ("[D]ivisions are not bound by the decisions of other divisions . . . .").

a very small quantity may not be. *Wells-Yates*, ¶¶ 60, 69. *Melton* offers another: the value of stolen property. Theft of a large amount is more serious than theft of a small amount. *Melton*, ¶ 24. The defendant's motive for the offense and the degree of violence involved in the offense may also be relevant. *Wells-Yates*, ¶ 12. In contrast, the defendant's commission of other factually and legally unrelated crimes — while perhaps relevant at sentencing to the severity of the defendant's overall course of conduct — is not relevant to the gravity or seriousness of the offense of conviction.

¶ 29     This does not mean that the inquiry is limited to the *elements* of that offense. Such a limitation would defy *Wells-Yates*'s directive to consider "the facts and circumstances surrounding [the] offense." *Id.* at ¶ 75. Thus, for example, if a defendant pleads guilty to a lesser included offense arising out of the same facts as a charged greater offense, the court is not foreclosed from considering the aggravating facts of the offense as it was actually committed. Similarly, if a defendant stipulates to a factual basis for an offense that encompasses a greater offense than the offense to which the defendant pleads guilty, the court may properly consider those additional facts. In either case, the question must remain the

15

gravity or seriousness of the offense of conviction — not the greater offense — but the aggravating facts may be part of that inquiry.

¶ 30　　The specific question in this case is whether, in assessing the gravity or seriousness of a predicate offense of possession of a controlled substance, a court may consider the defendant's alleged distribution of that substance.  We conclude that, at least where the distribution is of the same drugs and occurs at the same time as the possession offense, such distribution may be considered as part of the facts and circumstances surrounding the offense.[4]  *See id.* at ¶ 12 (noting that "motive is relevant").  Importantly, however, it does not convert the offense to one of distribution — a per se grave or serious crime.  *Id.* at ¶¶ 66, 72.  The offense is still possession — "among the least (and arguably the least) grave or serious of all drug offenses."  *Id.* at ¶ 69.  But the defendant's distribution of the drugs possessed may serve as one component of the "individualized determination" of "the specific [possession] crime committed."  *Id.*

---

[4] We do not consider a scenario in which a defendant is found to have distributed *different* drugs than those the defendant is convicted of possessing.

16

### C. Abbreviated Proportionality Review

¶ 31     Having addressed the scope of an abbreviated proportionality review, we now conduct that review, "consider[ing] each triggering offense and the predicate offenses together [to] determine whether, in combination, they are so lacking in gravity or seriousness as to raise an inference that the sentence imposed on that triggering offense is grossly disproportionate." *Wells-Yates*, ¶ 2.

¶ 32     Before we do, we pause to highlight two points.  First, at this stage, our task is not to decide the ultimate question of whether the sentences are unconstitutional.  Instead, we consider only whether those sentences give rise to an *inference* of gross disproportionality, such that an extended proportionality review is warranted.  *Id.* at ¶ 15.  Second, because fixing criminal penalties involves policy judgments ordinarily left to the legislature, sentences that are consistent with the legislative scheme will rarely raise such an inference.  *Id.* at ¶¶ 7, 21.  But rarely does not mean never.  And it remains our role to determine de novo whether the legislature's choice raises that inference in a particular case.  *Id.* at ¶ 35.

### 1. Gravity or Seriousness of Offenses

¶ 33 In assessing the gravity or seriousness of an offense, we consider "the harm caused or threatened to the victim or society" and "the culpability of the offender." *Id.* at ¶ 12 (quoting *Solem*, 463 U.S. at 292). This inquiry is "somewhat imprecise." *Id.* (citation omitted). But pertinent factors may include (1) the absolute magnitude of the crime; (2) whether the crime is a lesser included offense or the greater inclusive offense; (3) whether the crime involves a completed act or an attempt; (4) whether the defendant was a principal or an accessory after the fact; (5) the defendant's motive; and (6) the defendant's mental state. *Id.* In addition, "nonviolent crimes are less serious than crimes marked by violence or the threat of violence." *Solem*, 463 U.S. at 292-93.

¶ 34 These factors are not exhaustive, however. *Wells-Yates*, ¶ 12. A proper assessment of the seriousness of an offense requires consideration of any relevant "facts and circumstances surrounding that offense." *Id.* at ¶ 75. Contrary to Wells-Yates's suggestion, a fact is not impermissibly "subjective" simply because it is case-specific or because it does not fit neatly within one of the enumerated factors. Although assessing the seriousness of an

18

offense necessarily requires a degree of judgment, the risk of unmoored subjectivity is sufficiently constrained by the overarching criteria of harm and culpability. *Id.* at ¶ 12; *Solem*, 463 U.S. at 292.

¶ 35    We also consider statutory amendments enacted after the date of the offense — not because they apply retroactively but because they are "the most valid indicia of Colorado's evolving standards of decency." *Wells-Yates*, ¶¶ 45, 48. Such amendments are not "determinative of whether an offense is grave or serious" but must be considered along with the "facts and circumstances surrounding the crime committed." *People v. McRae*, 2019 CO 91, ¶ 16.

¶ 36    Except for per se grave or serious offenses, the gravity or seriousness inquiry is not binary: the question is not "is the offense serious or not?" A crime may be serious enough to warrant one sentence but not another. Instead, the question is one of degree — *how* serious is the offense — as a precursor to the next step of balancing the seriousness of the offense against the harshness of the penalty. *Id.* at ¶ 8; *see Solem*, 463 U.S. at 292 (explaining that courts can judge the gravity of an offense "on a relative scale").

### a. Predicate Offenses

¶ 37    Each of Wells-Yates's sentences is based on the same three predicate offenses: one for possession with intent to sell or distribute methamphetamine and two for simple possession of methamphetamine. *See Wells-Yates*, ¶ 34. None of these offenses are per se grave or serious. *Id.* at ¶ 68. We therefore must consider the relative gravity or seriousness of each offense. *Id.* at ¶¶ 12-13.

¶ 38    We have little trouble concluding that Wells-Yates's two possession convictions are not especially grave or serious. As found by the district court, the first involved quantities of 1.2 grams and 0.8 grams of methamphetamine (worth $210), and the second involved 6.5 grams (worth $350).[5] Although aggravated by the fact that Wells-Yates committed the offenses while she was on probation, both were nonviolent, lesser included offenses. *See id.* at ¶ 12; *Solem*, 463 U.S. at 292. For the first, Wells-Yates was sentenced to probation, and for the second, she received a suspended sentence (which was later revoked when Wells-Yates failed to complete a residential substance abuse program).

---

[5] The value of the drugs is based on the district court's findings as to their sale price, drawn from the arrest warrant affidavits.

¶ 39    Perhaps most importantly, these offenses lie at the core of the "sea change in our General Assembly's philosophy regarding the handling of drug offenses." *Wells-Yates*, ¶ 47. Those offenses — though class 4 felonies at the time — have since been reclassified as a level 1 drug misdemeanor (less than four grams) and a level 4 drug felony (more than four grams) with substantially reduced sentencing ranges. § 18-18-403.5(2)(a), (c), C.R.S. 2023; § 18-1.3-401.5(2)(a), C.R.S. 2023; § 18-1.3-501(1)(d), (d.5)(I)(A), C.R.S. 2023 (providing that purpose of sentencing for most drug possession is treatment). And they no longer qualify as predicate offenses under the habitual criminal statute. § 18-1.3-801(2)(b); *Wells-Yates*, ¶¶ 42-43; *Thomas v. People*, 2021 CO 84, ¶ 63 (holding that "level 4 drug felonies qualify as neither triggering offenses nor predicate offenses for habitual criminal purposes"). The reclassification of an offense is "trustworthy evidence of the legislature's view of the gravity or seriousness of the crime." *Wells-Yates*, ¶ 50.

¶ 40    The district court noted that methamphetamine is a "pernicious" drug, and we do not disagree. Nor do we minimize the drug's destructive effects on the user and society. But the severity of an offense must be judged "on a relative scale." *Solem*, 463 U.S.

21

at 292.  And on that scale, "drug offenses are generally less grave or serious than previously thought" and "less grave or serious than the vast majority of felony offenses."  *Wells-Yates*, ¶¶ 51, 59.  Simple possession — particularly possession of a small amount — lies at the bottom of that scale.  *See id.* at ¶ 69 (noting that "possession may be grave or serious . . . when a defendant possesses a large quantity of narcotics"); *cf. Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring in part and concurring in the judgment) (concluding that offense was serious where defendant possessed more than 650 grams of cocaine with a potential yield of 32,500 to 65,000 doses).

¶ 41     Wells-Yates's prior conviction for possession with intent to sell or distribute is one step up on the seriousness scale, but it is still less grave or serious than distribution.  *Wells-Yates*, ¶ 70.  The seriousness of that offense requires "a case-by-case evaluation" of the surrounding facts and circumstances, including the quantity of drugs involved.  *Id.* at ¶¶ 70-72.  Wells-Yates's offense involved a "very small quantity" — one-sixteenth of an ounce (worth $150).  *Id.* at ¶ 71.  It was a nonviolent, lesser offense (as compared to distribution), for which she was sentenced to probation.  Moreover, like Wells-Yates's other offenses, the legislature has since reduced

22

the classification of the offense "from an extraordinary risk class 3 felony to a level 3 drug felony that carries less severe penalties and is not considered an extraordinary risk crime." *Id.* at ¶ 43.

¶ 42    In concluding that Wells-Yates's predicate offenses were grave or serious, the district court relied heavily on its finding — based on arrest affidavits — that Wells-Yates *distributed* methamphetamine on each occasion. As we note above, Wells-Yates's distribution of the drugs she was convicted of possessing elevates the seriousness of her predicate offenses. But the volume of that distribution was small, with each offense involving one or two transactions between $90 and $350. And while that distribution is one of the facts and circumstances surrounding the predicate offenses, the offenses were not distribution offenses. To the contrary, Wells-Yates's predicate offenses were possession and possession with intent — a crime that "refers to someone who, while intending to sell [or] distribute . . . narcotics, does not actually do so." *Id.* at ¶ 72.

b.    Triggering Offenses

¶ 43    We now turn to the gravity or seriousness of the triggering offenses. In doing so, we separately consider each triggering offense, together with the predicate offenses. *Id.* at ¶¶ 37-38. As

23

with the predicate offenses, none of the triggering offenses are per se grave or serious, so we consider the "facts and circumstances of the particular crime committed." *Id.* at ¶ 71; *see People v. Session*, 2020 COA 158, ¶ 46 (holding that second degree burglary is not a per se grave or serious offense); *People v. Wright*, 2021 COA 106, ¶ 72 (applying *Session* to second degree burglary of a dwelling); *Melton*, ¶ 18 (holding that theft is not per se grave or serious).

i. Possession with Intent to Distribute

¶ 44 Much of what we have said above applies equally to the triggering offense of possession with intent to distribute, which has similarly been reclassified as a level 3 drug felony. *Wells-Yates*, ¶ 43. Like the predicate offenses, this offense involved a small amount of methamphetamine and no violence. Wells-Yates was also in possession of scales, small plastic bags, drug paraphernalia, and a transaction book. *Wells-Yates* offered that precise scenario — "an addict found in possession of baggies, a scale, and a very small quantity of narcotics" — as an example of possession with intent that does *not* "rise[] to the level of grave or serious." *Id.* at ¶ 71.

¶ 45 There is one additional factor here, however. Wells-Yates was also in possession of a handgun. The presence of a gun

24

undoubtedly increases the seriousness of a drug offense. *See People v. Hopper*, 284 P.3d 87, 91 (Colo. App. 2011) (noting "the well-known potential for danger that exists whenever drugs *and* deadly weapons are present"); § 18-18-407(1)(d), C.R.S. 2023 (providing that a felony drug offense is a level 1 drug felony if, at the time of the offense, the defendant possessed a deadly weapon "on his or her person or within his or her immediate reach" or a firearm "to which the defendant . . . had access in a manner that posed a risk to others or in a vehicle the defendant was occupying").

¶ 46    But the district court did not make any specific findings as to the location of the gun or the nature of Wells-Yates's access to it at the time of her offense. The court said only that "[t]he evidence at trial indicated that she was in possession of a handgun" and that Wells-Yates was "found with a handgun." And while we agree with the district court that Wells-Yates's possession of a gun aggravates her offense, it does not transform that offense into one under the special offender statute. *See* § 18-18-407(1)(d). Wells-Yates was not convicted (or even charged) under the special offender statute in effect at the time of her offense. *See* § 18-18-407(1)(f), C.R.S. 2012.

¶ 47    Moreover, in weighing the gravity or seriousness of the triggering and predicate offenses *in combination,* we must also take into account Wells-Yates's "history of felony recidivism."  *Wells-Yates,* ¶ 23.  That means that Wells-Yates's triggering possession with intent offense is more serious because it was her fourth methamphetamine-related conviction than if it had been her first.  But we do not consider recidivism in the abstract.  *Solem,* 463 U.S. at 296-97.  Instead, the seriousness of that recidivism must take into account the seriousness of the predicate offenses.  *Id.*  Because Wells-Yates's predicate offenses were not especially grave or serious, the repeat nature of the triggering offense weighs less heavily.  *Id.*

### ii.    Second Degree Burglary of a Dwelling

¶ 48    We view the triggering burglary offense — second degree burglary of a dwelling — differently.  There has been no similar "sea change" with respect to that crime.  *Wells-Yates*, ¶ 47.  Instead, it has remained a class 3 felony since Wells-Yates committed the offense.  *See id.* at ¶ 50 ("[T]he more grave or serious an offense, the more serious the level of classification assigned . . . .").  And the facts and circumstances of that offense, as found by the district court, make it substantially more serious than the drug offense.

26

¶ 49    Wells-Yates broke into a home and stole the residents' personal property, much of which was never returned. *See Session*, ¶ 48 (observing that a second degree burglary committed by entering a home and stealing the owner's personal effects would be grave or serious). She did so as the "ring-leader" of a scheme to burglarize the homes of residents who had been ordered to evacuate due to an approaching wildfire. Thus, she intentionally targeted victims she knew were vulnerable. These circumstances are indicative of a high degree of culpability. *Wells-Yates*, ¶ 12.

¶ 50    Moreover, although the crime was (perhaps fortuitously) not violent, it was not victimless. To the contrary, the victims testified that the burglary had a significant emotional impact on them. *See id.* at ¶ 12 (instructing courts to consider "the harm caused or threatened to the victim or society"). And the lack of violence was certainly not a given. Any unlawful entry into another's home necessarily "risk[s] a dangerous confrontation." *Session,* ¶ 48.

¶ 51    Wells-Yates stresses that the home was unoccupied, which was part of her plan to burglarize homes that had been evacuated. And perhaps that factor somewhat lessens her culpability — particularly because she knew (or believed) the home to be

27

unoccupied.  *See id.*  But even the burglary of an unoccupied home under the circumstances here causes substantial harm to the victim and reflects a high degree of culpability on the part of the offender.  *Wells-Yates*, ¶ 12.  Thus, we conclude that Wells-Yates's triggering burglary offense was considerably grave or serious — made even more so by her history of felony recidivism.  *Id.* at ¶ 23.

### iii.    Other Triggering Offenses

¶ 52    The remaining triggering offenses — conspiracy to commit second degree burglary, theft, and four counts of identity theft — are all nonviolent and lower class felonies than second degree burglary, thus indicating the legislature's view that they are less serious.  *Id.* at ¶ 50.  But there are other aspects of each of those crimes that increase their gravity or seriousness as well.

¶ 53    We emphasize that the sentence for each triggering offense is entitled to its own abbreviated proportionality review.  *Id.* at ¶ 74.  Thus, we do not lump all of the triggering offenses together and consider the gravity or seriousness of Wells-Yates's criminal conduct as a whole.  *See id* at ¶ 38.  Instead, we must consider each triggering offense independently and make an "individualized

28

determination" of the gravity or seriousness of that particular offense, when combined with the predicate offenses. *Id.* at ¶ 69.

¶ 54 The conspiracy offense shares many, but not all, of the aggravating facts of the burglary offense. Like the burglary, the conspiracy intentionally targeted victims who had evacuated their homes because of the approaching wildfire. Wells-Yates was the "ring-leader" of the plot and enlisted others to assist her, thus increasing her culpability. And the object of the conspiracy was to steal guns. Although Wells-Yates did not complete this burglary — making this offense less serious than the burglary offense — that does not detract from the seriousness of the conspiracy itself.

¶ 55 Three of the identity theft offenses involved Wells-Yates's use of identity information she stole during the burglary and, thus, targeted the same vulnerable victims. The fourth involved her sale of identity documents she had taken from a victim's car. As to that offense, the district court found that the nature of the documents that were stolen and sold — a birth certificate, a social security card, and a driver's license — "could have allowed someone to create a complete fictitious and fraudulent identity of [the victim]." Although it does not appear that the victims suffered any *actual*

29

loss, the district court noted that the *potential* financial loss and emotional harm to the victim were substantial. *See id.* at ¶ 12 (directing courts to consider the harm *threatened* to the victim).

¶ 56    The theft offense involved items taken from the victims' home during the burglary. The district court did not specify the value of the items stolen, but it stated that the value was "large." *See Melton*, ¶ 24 (noting that the value of stolen items is relevant to whether theft offense is grave or serious). One victim testified at the proportionality hearing that the stolen items included a guitar, company checks, jewelry, a gas card used to charge around $500 (later clarified to be $324), and other "family heirloom" items.

¶ 57    We must take into account the recent legislative amendments to the theft statute, which reduce the classification of theft offenses at designated value thresholds. *Id.* at ¶ 15. At the time of Wells-Yates's offense, theft of items valued anywhere between $1,000 and $20,000 was a class 4 felony. § 18-4-401(1), (2)(c), C.R.S. 2012. But today, theft of items valued up to $2,000 is a misdemeanor and not subject to the habitual criminal statute at all. *Melton*, ¶ 15; § 18-4-401(1), (2)(e), C.R.S. 2023. Theft of items valued between $2,000 and $5,000 is a class 6 felony, and theft of items valued

between $5,000 and $20,000 is a class 5 felony. § 18-4-401(2)(f), (g). These statutory changes, though "not dispositive," are relevant to the gravity or seriousness of the theft offense. *Melton*, ¶ 15.

¶ 58   Finally, the gravity or seriousness of each of these triggering offenses is exacerbated by Wells-Yates's "history of felony recidivism" — though not to as great of a degree as if those predicate offenses were more serious. *Wells-Yates*, ¶ 23.

2.   Harshness of Penalties

¶ 59   We now consider the harshness of the penalty imposed for each of the triggering offenses, taking into account Wells-Yates's eligibility for parole "because parole can reduce the actual period of confinement and render the penalty less harsh." *Wells-Yates*, ¶ 14.

¶ 60   The sentences are harsh — sixty-four years for possession with intent to distribute, forty-eight years for second degree burglary, and twenty-four years each for the other offenses. Driven by the habitual criminal adjudication, these sentences are four times the maximum presumptive sentence that would otherwise apply. *Id.* at ¶ 19; § 18-1.3-801(2)(a)(I)(A). Taking into account parole eligibility and maximum good time and earned time credit,

31

Wells-Yates will spend at least twenty-nine years, twenty-one years, and nine years, respectively, in prison for these offenses.

¶ 61    But like the gravity or seriousness inquiry, the harshness inquiry is not binary.  A harsh sentence may be constitutional if "the punishment . . . fit[s] the crime."  *Wells-Yates*, ¶ 1.  Conversely, a sentence that is not harsh in the abstract may be grossly disproportionate to a particular crime.  *See Robinson v. California,* 370 U.S. 660, 667 (1962) ("Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold.").  Even a sentence for a *serious* offense can support an inference of gross disproportionality.  *Wells-Yates*, ¶ 27.  Thus, the question we must answer is not simply whether the penalties imposed in this case are harsh, but whether they are so harsh as to give rise to an inference of disproportionality, given the gravity or seriousness of the triggering and predicate offenses together.  *Id.* at ¶ 23.

¶ 62    With respect to the sentence for possession with intent to distribute, we conclude that it is.  For being "found in possession of baggies, a scale, and a very small quantity of narcotics" (as well as drug paraphernalia and a transaction book), *id.* at ¶ 71, Wells-Yates was sentenced to prison for sixty-four years (likely the rest of her

32

life) and will serve at least twenty-nine years. *Cf. Harmelin*, 501 U.S. at 996 (noting that life imprisonment with the possibility of parole is the "third most severe" sentence known to law). This for a crime that, had she committed it sixteen months later, would have resulted in a sentence of two to four years. *Wells-Yates*, ¶ 43.

¶ 63 Under the circumstances here, where all of Wells-Yates's predicate offenses are also non-distribution drug offenses for which the penalties have been drastically reduced, we conclude that this sentence raises an inference of gross disproportionality. *Id.* at ¶ 76; *see also Oldright*, ¶ 26 ("The answer [to whether a sentence raises an inference of gross disproportionality] lies in the nature and number of [the defendant's] prior convictions."). We therefore reverse this sentence and remand to the district court to conduct an extended proportionality review. *See Oldright*, ¶ 27.

¶ 64 In reaching this conclusion, we recognize that it will be a "rare case" in which abbreviated proportionality review leads to an inference of gross disproportionality. *Id.* at ¶¶ 7, 21. But rarely do we have such an unequivocal indication of the "evolving standards of decency" that apply to *both* the triggering and predicate offenses. *Id.* at ¶ 47. And while the legislative changes came sixteen months

too late to help Wells-Yates, the evolving standards they reflect are not so confined. *Id.* at ¶ 48; *see also Graham,* 560 U.S. at 85 (Stevens, J., concurring) ("Punishments that did not seem cruel and unusual at one time may, in the light of reason and experience, be found cruel and unusual at a later time; unless we are to abandon the moral commitment embodied in the Eight Amendment, proportionality review must never become effectively obsolete.").

¶ 65 While a close call, we reach a different conclusion with respect to the sentence for second degree burglary. That offense was serious for the reasons discussed above. Breaking into another's home to steal not only their property, but their identity, causes or threatens to cause serious harm to the victim — financial, emotional, and in the event of a confrontation, physical. Targeting a victim who is fleeing from a natural disaster is more culpable still.

¶ 66 We acknowledge that this sentence too was quadrupled based on predicate offenses we have deemed not especially grave or serious, including two that would no longer qualify as predicate offenses under the habitual criminal statute. But unlike possession with intent, there is no similar legislative expression of evolving standards of decency applicable to the burglary offense itself.

34

Considering the facts and circumstances surrounding the burglary offense, in combination with the predicate offenses, we cannot conclude that this is one of those rare situations in which the legislature's habitual criminal sentencing determination raises an inference of gross disproportionality. *See Wells-Yates*, ¶ 21.

¶ 67    We reach the same conclusion with respect to Wells-Yates's other sentences. Initially, we note that these twenty-four-year sentences are, in absolute terms, substantially less harsh than the other two. Although there is no minimum threshold for gross disproportionality, the constitutional line-drawing becomes more challenging (and less objective) as the sentence length decreases. *See Solem*, 463 U.S. at 294 ("It is clear that a 25-year sentence generally is more severe than a 15-year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not.") (footnote omitted).

¶ 68    True, these sentences were all a product of the same formulaic quadrupling that dictated the others — a multiplier made all the more troubling by the nature of the predicate offenses and the fact that the sentences would be substantially less today. The theft offense, in particular, may not even have been a felony under the

current statute.  But given the serious aspects of the offenses that we discuss above and the history of recidivism, we cannot conclude that any one of the triggering offenses and the predicate offenses, "considered together, are so lacking in gravity or seriousness as to suggest" that a twenty-four-year sentence, with the possibility of parole after nine years, crosses the constitutional line.  *Wells-Yates*, ¶ 24; *see also id.* at ¶ 5 ("'The Eighth Amendment does not require strict proportionality between crime and sentence'; instead, 'it forbids only extreme sentences that are "grossly disproportionate" to the crime.'") (quoting *Harmelin*, 501 U.S. at 1001).

¶ 69     In short, *Wells-Yates* — and the "sea change" in legislative attitudes toward certain drug offenses — makes sentences for non-distribution, non-manufacturing drug offenses under the old regime unique in the proportionality analysis.  Although Wells-Yates's other sentences were impacted by that old regime based on her predicate offenses, the same considerations do not apply to the other triggering offenses.  For those offenses, we heed the general guidance that "in habitual criminal cases . . . an abbreviated proportionality review will almost always yield a finding that the sentence is not unconstitutionally disproportionate."  *Id.* at ¶ 21.

36

¶ 70    We therefore reverse Wells-Yates's sentence for possession of methamphetamine with intent to distribute, and we remand the case to the district court to conduct an extended proportionality review of that sentence.  We affirm the remaining sentences.[6]

## D.    Categorical Rule

¶ 71    Wells-Yates asks us to go further and declare a categorical rule that quadrupling the sentence for an offense based solely on prior drug possession convictions is per se unconstitutional.

¶ 72    We decline to do so for four reasons.  First, Wells-Yates did not raise this argument below.  *See People v. Grassi,* 364 P.3d 1144, 1149 (Colo. App. 2011) (declining to address argument because the defendant did not raise it on remand).  Second, it is inconsistent with the supreme court's mandate that proportionality review of the sentences in this case requires "an analysis of the facts and circumstances" surrounding each triggering and predicate offense. *Wells-Yates,* ¶ 75; *see also Owners Ins. Co.,* ¶ 24 (noting that we

---

[6] We recognize that a finding of gross disproportionality on the possession with intent conviction would not reduce Wells-Yates's overall term of imprisonment, given the consecutive forty-eight-year and twenty-four-year sentences on the burglary and identity theft counts.  But each sentence is nevertheless entitled to its own independent proportionality review.  *Wells-Yates,* ¶ 74.

must follow the supreme court's mandate). Third, it is inconsistent with *Wells-Yates*'s direction that (1) the seriousness of a possession offense should turn on "an individualized determination" of "the facts and circumstances surrounding the specific crime committed," *Wells-Yates*, ¶ 69; and (2) proportionality review of a habitual criminal sentence must take into account the triggering offense and predicate offenses *together*, *id.* at ¶ 76. Fourth, Wells-Yates's sentences were not quadrupled based solely on prior convictions for simple possession; one of her predicate offenses was for possession with intent to distribute. *See id.* at ¶ 70 (noting that "many convictions for possession with intent will be grave or serious").

## III. Disposition

¶ 73 The sixty-four-year sentence for possession with intent to distribute methamphetamine is reversed, and the case is remanded for the district court to conduct an extended proportionality review of that sentence. The remaining sentences are affirmed.

JUDGE TOW and JUDGE GRAHAM concur.