21CA0744 Peo v Lagunas 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 21CA0744
Weld County District Court Nos. 20CR1152 & 20CR1324
Honorable Vincente G. Vigil, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Victorino Lagunas, Jr.,

Defendant-Appellant.

---

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BROWN
Tow and Schock, JJ., concur

Prior Opinion Announced September 14, 2023, Vacated in 23SC767

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Victorino Lagunas, Jr., pleaded guilty to one count of second degree assault as an act of domestic violence against his former girlfriend, K.S.  Lagunas appealed the district court's order awarding restitution, and we affirmed.  *People v. Lagunas*, (Colo. App. No. 21CA0744, Sep. 14, 2023) (not published pursuant to C.A.R. 35(e)).  The Colorado Supreme Court granted Lagunas' petition for writ of certiorari, vacated the division's opinion, and remanded the case to this court for reconsideration in light of *Snow v. People*, 2025 CO 32.  *See Lagunas v. People*, (Colo. No. 23SC0767, Aug. 4, 2025) (unpublished order).  In *Snow*, ¶ 21, the supreme court held that the failure to enter at least one of the enumerated restitution orders required by section 18-1.3-603(1), C.R.S. 2024,[1] results in an illegal sentence.

¶ 2    On appeal, Lagunas did not raise a claim that his sentence was illegal because the district court failed to enter one of the four enumerated restitution orders.  But the supreme court's remand order plainly requires us to address that issue.  *See Snow*, ¶ 24

---

[1] Throughout this opinion, we cite the 2024 version of this statute, as that was the version in effect at all relevant times.  The statute has since been amended.

("Colorado jurisprudence allows — and, in fact requires — courts to correct an illegal sentence . . . .); *People v. Isom*, 2015 COA 89, ¶ 7 (a court has "the power and the duty" to correct a sentence that is not authorized by law, and it may do so at any time), *aff'd*, 2017 CO 110. Having considered the parties' supplemental briefs, we agree with Lagunas that the district court failed to enter one of the required restitution orders at sentencing and that he is not liable to pay any restitution. Consequently, we vacate the restitution order and remand for entry of an order under section 18-1.3-603(1)(d) that no restitution is owed.

## I.     Relevant Background

¶ 3     As a term of his plea agreement, Lagunas agreed that the prosecution could "reserve restitution for [sixty] days." He also stipulated to "proximate cause for the purposes of restitution." And he agreed that "[r]estitution . . . as to all originally filed and pled counts w[ould] be as ordered by the [c]ourt."

¶ 4     At the providency hearing, the district court reiterated the terms of Lagunas' plea, including that the prosecution "would be reserving restitution for [sixty] days and [that Lagunas] would be

2

stipulating to proximate causation for the purposes of any restitution requests." Otherwise, restitution was not discussed.

¶ 5    At the sentencing hearing, the prosecution did not request or otherwise address restitution. When advocating for a probationary sentence, defense counsel told the district court, "There's probably restitution going to be coming down in [ninety] days or there will be and he'll need to be responsible for that. He's more than willing to pay that." The court ordered that the prosecution would have "[sixty] days to file any request for restitution in this case" and that, "[i]f one [wa]s filed," Lagunas would have fourteen days to file an objection or response. The mittimus noted that the prosecution had sixty days to file a notice of restitution.

¶ 6    The prosecution filed a request for restitution fifty-nine days after the sentencing hearing. The court later conducted a restitution hearing and ordered Lagunas to pay $7,189.40 in restitution.

## II.    Standard of Review and Applicable Law

¶ 7    We review de novo the legality of a sentence. *Snow*, ¶ 19.

¶ 8    When Lagunas was sentenced, section 18-1.3-603(1) required that every judgment of conviction include one of the following:

3

(a) An order of a specific amount of restitution be paid by the defendant;

(b) An order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined;

(c) An order, in addition to or in place of a specific amount of restitution, that the defendant pay restitution covering the actual costs of specific future treatment of any victim of the crime; or

(d) Contain a specific finding that no victim of the crime suffered a pecuniary loss and therefore no order for the payment of restitution is being entered.

§ 18-1.3-603(1); *see Snow*, ¶ 20; *People v. Weeks*, 2021 CO 75, ¶ 3; *see also* Crim. P. 32(b)(3)(I) (requiring that the judgment of conviction consist of, among other things, a recital of the plea, the sentence, and "an order or finding regarding restitution as required by section 18-1.3-603").

¶ 9     A sentence that fails to include one or more of the subsection (1) orders, "is a sentence not authorized by law (i.e., an illegal sentence) that may be corrected at any time." *Snow*, ¶ 21. But the district court may not correct the illegality by entering a

4

subsection (1) order sometime after sentencing.  *See id.* at ¶¶ 30-32.

Rather, "the sole remedy consistent with the legislative intent

behind subsection (1) is vacatur of the untimely restitution order

and entry of an order pursuant to subsection (1)(d) that there is no

restitution owed."  *Id.* at ¶ 38.

### III.  Analysis

¶ 10    Lagunas contends that the district court failed to enter one of

the orders required by section 18-1.3-603(1) at sentencing,

resulting in an illegal sentence that must be corrected by entry of a

subsection (1)(d) order that no restitution is owed.  We agree.

¶ 11    In *Snow*, the Colorado Supreme Court considered whether

Snow's sentence was illegal because the trial court failed to enter an

order authorized by 18-1.3-603(1).  *Id.* at ¶ 22.  The supreme court

explained that Snow pleaded guilty to second degree murder via a

plea agreement that did not mention restitution.  *Id.* at ¶ 6.  The

issue of restitution was also "conspicuously absent" from the

providency hearing.  *Id.* at ¶ 29.  At the sentencing hearing, "the

prosecution did not request restitution or give any indication that it

intended to seek restitution.  Instead, it simply asked the court 'to

reserve restitution at this point in time.'"  *Id.* at ¶ 7.  The trial court

5

"reserve[d] restitution for [sixty] days.'" *Id.* The supreme court viewed the colloquy between the court and the prosecution at sentencing to leave "no doubt that everyone intended to defer until after sentencing the issue of restitution in its entirety." *Id.* at ¶ 29.

¶ 12 On these facts, the supreme court held that the trial court "imposed a sentence not authorized by law because the mere reservation of the issue of restitution in its entirety failed to adhere to subsection (1)." *Id.* at ¶ 22. It reasoned that the trial court record was "barren of an explicit or implicit finding of restitution liability either before or during the sentencing hearing" and that there was "no basis . . . to infer that the only issue the [trial] court deferred until after the sentencing hearing was the determination of the amount of restitution," as allowed by subsection (1)(b). *Id.* at ¶ 29.

¶ 13 At Lagunas' sentencing, "the prosecution did not request restitution or give any indication that it intended to seek restitution." *Id.* at ¶ 7. It did not even ask to "reserve restitution" like the prosecution did in *Snow*. *Id.* True, defense counsel indicated that Lagunas would be responsible for and was willing to pay restitution, but counsel's statements were even arguably

equivocal about whether restitution would be requested or ordered, noting that there was "probably restitution going to be coming down . . . or there w[ould] be."

¶ 14 The district court's only restitution-related order at sentencing was to allow the prosecution to "file *any* request for restitution" within sixty days. (Emphasis added.) The use of "any" before "request for restitution" reflects that the prosecution had not yet made a request for restitution, and the court had not yet granted it. Indeed, the court continued, "*If one is filed,* I will give [Lagunas'] attorney [fourteen] days to object." (Emphasis added.) The court did not (1) order Lagunas to pay a specific amount of restitution, *see* § 18-1.3-603(1)(a); (2) order that Lagunas was liable for restitution but reserve determining the amount for a later date, *see* § 18-1.3-603(1)(b); (3) order Lagunas to pay the actual cost of specific future treatment for the victim, *see* § 18-1.3-603(1)(c); or (4) order no restitution, *see* § 18-1.3-603(1)(d). Thus, "because the district court failed to enter at least one of the four restitution orders authorized by subsection (1), [Lagunas] received an illegal sentence." *Snow,* ¶ 23.

¶ 15    The People attempt to distinguish this case from *Snow*, arguing that the record establishes that the district court "intended to effectuate a subsection (1)(b) order of restitution that found Lagunas liable for restitution but that the specific amount was deferred for later determination." Essentially, the People argue that we may imply from the surrounding circumstances that the court only deferred determination of the *amount* of restitution, rather than reserving restitution *in its entirety* as prohibited by *Snow*. The People highlight that (1) Lagunas' plea agreement addressed restitution; (2) the court addressed restitution at the providency hearing; (3) the presentence investigation (PSI) report recommended that Lagunas "pay restitution as ordered"; and (4) the court acknowledged the PSI and heard evidence about the victim's injuries as part of the sentencing hearing. We are not persuaded.

¶ 16    First, although Lagunas' plea agreement addressed restitution, we disagree with the People that it reflects Lagunas' agreement to be liable for restitution, subject only to determination of the amount. In the plea agreement, Lagunas agreed that the prosecution could "reserve restitution" and that restitution would be "as ordered by the [c]ourt." He also stipulated to proximate

cause "for purposes of restitution," relieving the prosecution of its burden to prove causation at a restitution hearing. *See* § 18-1.3-602(3)(a), C.R.S. 2025 (defining restitution as pecuniary losses suffered by a victim and "proximately caused by an offender's conduct"). But he did not agree that he was liable for restitution.[2]

¶ 17　　Second, at the providency hearing, restitution was mentioned only once, when the court reviewed the basic terms of the plea with Lagunas. The court reminded Lagunas that the prosecution would be "reserving restitution" and that Lagunas would be stipulating to proximate causation "for the purposes of *any* restitution requests." (Emphasis added.) Again, that the court used the word "any" before "restitution requests" — a word not used in the plea agreement itself — makes clear that no such request had been made or granted. The People argue that, by accepting the plea, the court accepted Lagunas' "stipulation to proximate causation and, thus,

---

[2] We understand the People's argument to be that Lagunas' plea provides relevant context for the district court's order at sentencing that would allow us to imply a valid subsection (1)(b) order. To the extent the People contend that Lagunas waived the court's compliance with section 18-1.3-603(1), C.R.S. 2024, through the plea agreement, we disagree because Lagunas cannot waive the illegality of his sentence. *See People v. Bottenfield*, 159 P.3d 643, 645 (Colo. App. 2006).

that he was liable for restitution." But we have rejected the People's interpretation of the plea agreement as reflecting Lagunas' agreement to be liable for restitution. And, in any event, the court was not bound by the terms of the plea agreement. *See People v. Mazzarelli*, 2019 CO 71, ¶¶ 20-21 (a trial court is not bound by the terms of a plea agreement simply by accepting the guilty plea).

¶ 18　Third, that Lagunas' PSI recounted the need for medical intervention to address the victim's injuries and recommended that Lagunas pay restitution does not change our view of the court's order at sentencing. The PSI said nothing about the victim being responsible for medical bills, nor did it indicate that the victim was seeking restitution. And though the victim attended the sentencing, she did not speak and did not otherwise request restitution. Thus, while we recognize, as the People argue, that the existence of the PSI is a factual difference between this case and *Snow*, we do not think it *distinguishes* this case from *Snow*.

¶ 19　It is true that it would be reasonable to infer that the victim here suffered a pecuniary loss. But the existence of such a loss does not automatically transform the district court's order at sentencing into a valid subsection (1) order. Indeed, *Snow* was a

homicide — another case in which it would have been reasonable for the sentencing court to anticipate that restitution may be requested. Nevertheless, as the supreme court made clear in *Snow*, the district court cannot account for such an anticipated request by reserving the entire issue for future resolution.

¶ 20 Finally, we are not persuaded that, by merely acknowledging the PSI and focusing on the severity and permanency of the victim's injuries when sentencing Lagunas, the court entered a valid subsection (1)(b) order. As noted, the prosecution did not request restitution — or even say the word restitution — at the sentencing hearing. And the court's order as to restitution, in its entirety, said: "I will give the People [sixty] days to file any request for restitution in this case. If one is filed, I will give your attorney [fourteen] days to object." Even when considering the surrounding circumstances — including the plea agreement, PSI, and sentencing arguments — we cannot conclude that the court implicitly ordered Lagunas to pay restitution (reserving only the determination of the amount for a later date) under section 18-1.3-603(1)(b). *See Snow*, ¶ 29 ("Under these circumstances, there is no basis for us to infer that the only issue the district court deferred until after the

sentencing hearing was the determination of the amount of restitution.").

¶ 21 We acknowledge that the facts of this case fall somewhere between *Snow* — which we have discussed at length — and *Weeks* — which "was a subsection (1)(b) case." *Snow*, ¶ 28. At the sentencing in *Weeks*, "the prosecutor asked that the issue of restitution 'remain open,'" and the trial court ordered, "I will leave restitution open for ninety-one days." *Weeks*, ¶ 11. The court set a briefing schedule and explained, "If no request is made, I'll rule on the pleadings." *Id.* Yet the supreme court determined that the discussion in *Weeks* "reflected that the trial court had invoked subsection (1)(b)." *Snow*, ¶ 28.

¶ 22 The language the court used in this case is similar to the language the trial court used in *Weeks*. Even so, we conclude that we lack a valid subsection (1)(b) order in this case for two reasons.

¶ 23 First, the question of whether the trial court in *Weeks* entered a valid subsection (1) order was not before the supreme court in that case. *See id.* at ¶ 28 n.9. As explained in *Snow*,

> [T]he appeal in *Weeks* revolved around
> subsection (1)(b). The defendant challenged
> the judgment entered on the post-sentencing

12

> determination of the *restitution amount.*
> Accordingly, before us, the parties briefed
> issues exclusively related to the procedures
> and deadlines applicable when, at sentencing,
> *a trial court enters a subsection (1)(b) order*
> finding restitution liability and deferring the
> determination of the restitution amount.

*Id.* (second emphasis added) (citations omitted).

¶ 24 Second, *Snow* was careful to point out certain facts supporting an implicit finding of restitution liability in *Weeks*: (1) "at sentencing, the prosecution . . . advised that it had already decided it would be requesting restitution and that it intended to identify the proposed amount of restitution after sentencing," *Snow,* ¶ 28 (citing *Weeks,* ¶ 11); (2) before the hearing, "the trial court had previously granted the prosecution's request for an amount of restitution in the codefendant's case based on the *same pecuniary losses suffered by the same victim in the same incident,*" *id.* (citing *Weeks,* ¶ 11 n.6); and (3) "following the sentencing hearing, the court confirmed that, at sentencing, it had entered an order allowing the prosecution ninety-one days to submit the restitution information," *id.* (citing *Weeks,* ¶ 16). None of these facts are present in Lagunas' case.

¶ 25    In the end, we conclude that, because the district court failed to enter one of the orders required by section 18-1.3-603(1) at sentencing, Lagunas' sentence was illegal.  *See id.* at ¶ 23.  The deficiency could not be cured by the court's entry of a post-sentencing order obligating Lagunas to pay a sum certain in restitution.  *See id.* at ¶ 37.  The sole available remedy is to vacate the untimely restitution order and enter an order under subsection (1)(d) that no restitution is owed.  *Id.* at ¶ 38.

## IV.    Disposition

¶ 26    We vacate the restitution order and remand the case to the district court to enter an order under section 18-1.3-603(1)(d) that no restitution is owed.

JUDGE TOW and JUDGE SCHOCK concur.